# Exhibit A

# WARNING LETTER

# Infinite Product Company LLLP DBA Infinite CBD

MARCS-CMS 593175 — NOVEMBER 22, 2019

**Delivery Method:**

Via Overnight Delivery

**Product:**

Drugs

**Recipient:**

John Ramsay

Infinite Product Company LLLP DBA Infinite CBD

12364 W. Alameda Pkwy., Ste. 115
Lakewood, CO 80228-2845
United States

✉ info@infinitecbd.com (mailto:info@infinitecbd.com)

**Issuing Office:**

Center for Drug Evaluation and Research | CDER

10903 New Hampshire Avenue
Silver Spring, MD 20993
United States

## WARNING LETTER

November 22, 2019

RE: 593175

Dear Mr. Ramsay:

This letter is to advise you that the Food and Drug Administration (FDA) reviewed your website at the Internet address www.infinitecbd.com in September 2019 and has determined that you take orders there for the products "Absolute Zero 99% + CBD Isolate," "Freezing Point CBD Topical Cream," "Afterglow Healing Oil 100 mg CBD Total," "Nano Enhancer Pure Nano CBD," "Nano Freezing Point CBD Topical Cream," "Asteroid Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," and "Nano Non Dairy Creamer," all of which you

promote as products containing cannabidiol (CBD). We have also reviewed your social media websites at https://www.facebook.com/infinitecbd/ and https://www.instagram.com/infinite_c_b_d/; these websites direct consumers to your website http://www.infinitecbd.com to purchase your products. The claims on your website and social media websites establish that the above-named products are unapproved new drugs sold in violation of sections 505(a) and 301(d) of the Federal Food, Drug, and Cosmetic Act (the FD&C Act), 21 U.S.C. 355(a) and 331(d). Furthermore, these products are misbranded drugs under section 502(f)(1) of the FD&C Act, 21 U.S.C. 352(f)(1). FDA has also determined that you take orders for the products "Pet Droppers" and "Launch Pad" on your website at www.infinitecbd.com. These products, which you promote as products containing CBD, are unapproved new animal drugs that are unsafe under section 512(a) of the FD&C Act, 21 U.S.C. 360b(a), and adulterated under section 501(a)(5) of the FD&C Act, 21 U.S.C. 351(a)(5).

As explained further below, introducing or delivering these products for introduction into interstate commerce violates the FD&C Act. You can find the FD&C Act and FDA regulations through links on FDA's home page at www.fda.gov. You can find specific information about how FDA regulates CBD at https://www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd (https://www.fda.gov/news-events/publichealth-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd).

The Agency is particularly concerned that you market one of your unapproved new drug products, "Asteroid Gummies," for children. Specifically, your website states that consumers can give the product "as a treat to your kid[.]" Your product has not been evaluated by the Agency for safety, effectiveness, and quality. The use of untested drugs can have unpredictable and unintended consequences, especially in vulnerable populations. For example, children may be at greater risk for adverse reactions associated with certain drug products due to differences in the ability of children to absorb, metabolize, distribute, or excrete such drug products or their metabolites.

**Unapproved New Drugs**

Based on our review of your websites, your "Absolute Zero 99%+ CBD Isolate," "Freezing Point CBD Topical Cream," "Afterglow Healing Oil 100mg CBD Total," "Nano Enhancer Pure Nano CBD," "Nano Freezing Point CBD Topical Cream" "Asteroid Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," and "Nano Non Dairy Creamer" products are drugs under section 201(g)(1) of the FD&C Act, 21 U.S.C. 321(g)(1), because they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease and/or intended to affect the structure or any function of the body.

Examples of claims observed on your website www.infinitecbd.com that establish the intended use of your products as drugs include, but may not be limited to, the following:

On your product webpage for "Freezing Point CBD Topical Cream":

- "Freezing Point Cream[.] Freeze away all aches and pains... [P]ainkiller and muscle relaxant."

On your product webpage for "Afterglow Healing Oil 100mg CBD Total":

- "Great for new tattoos, eczema, psoriasis, acne, scarring, or open wounds."

On your product webpage for "Nano Freezing Point CBD Topical Cream":

- "Instantly eliminate aches and pains with NANO CBD Pain Cream ... Reduce pain and inflammation associated with conditions like arthritis, osteoarthritis, and muscle injury."

On your webpage titled "A Guide to Hepatitis and CBD":

- "Can CBD Alleviate Symptoms of Hepatitis…CBD can positively impact those with hepatitis C…It is clear that CBD's potential for helping those with hepatitis is there…"

On your webpage titled "Autism and the Endocannabinoid System":

- "CBD Can Alleviate Some Symptoms of Autism."

On your webpage titled "CBD as a Potential Treatment Method for Tourette Syndrome":

- "Cannabinoids Reduce Tourette Syndrome Symptoms…CBD can treat severe motor and vocal tics related to TS. Therefore, more and more TS patients are trying cannabinoids as an alternative treatment method."

On your webpage titled "World Cancer Day: How CBD Helps Cancer":

- "How CBD Helps Cancer…Using biological pathways, cannabinoids (like CBD) have been found to target and inhibit the growth of cancer cells."
- "A more specific examination of this shows that CBD has anti-angiogenic properties when applied to a variety of tumors."
- "A study published in early 2017 demonstrated that CBD improved the chances of survival in patients with aggressive brain cancers."
- "A study on lung cancers published in 2012 suggests that CBD 'decreases cancer cell invasiveness.' By acting to increase tissue inhibitor in particular molecules in the lungs, CBD acts to reduce the spread of cancerous cells."

On your webpage titled "Uses of CBD?":

- "Mad cow disease…Substance abuse disorders…Cancer…Diabetes…"
- "Neuroprotective: with regards to conditions such as Parkinson's and Alzheimer's, both studies have shown CBD to work against the toxicity in the neurons of the brain, working as an antioxidant and providing protection against further deterioration."
- "Anti-cancer: CBD has shown to be effective in blocking and preventing further growth of cancer cells within the body."
- "Mad Cow Disease – the prion is the agent responsible for causing neurodegenerative disease. With CBD, production of this agent is blocked."

On your webpage "Should I Use CBD Versus Opioids":

- "CBD – Natural and Safe Alternative to Opioids…Also due to opioids' addictiveness and painful withdrawal symptoms, people have moved towards using CBD as their primary treatment method."

Additional claims observed on your social media sites include, but are not limited to, the following:

On your Facebook page at https://www.facebook.com/infinitecbd:

- (posted May 25, 2018) "'[C]annabinoids have been tested in several experimental models of autoimmune disorders such as multiple sclerosis, rheumatoid arthritis, colitis and hepatitis and have been shown to protect the host from the pathogenesis…'"

On your Instagram page at https://www.instagram.com/infinite_c_b_d:

- (posted June 21, 2019) "Oxidative stress can trigger serious health issues, like cancer, heart disease, and Alzheimer's. CBD is a patented neuroprotective antioxidant."
- (posted August 16, 2019) "Infinite CBD was born out of the success of helping someone suffering from Lymes [sic] Disease. After taking CBD, the individual stated that he has become 'the most pain free' he had ever been"

Your "Absolute Zero 99%+ CBD Isolate," "Freezing Point CBD Topical Cream," "Afterglow Healing Oil 100mg CBD Total," "Nano Enhancer Pure Nano CBD," "Nano Freezing Point CBD Topical Cream," "Asteroid Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," and "Nano Non Dairy Creamer" products are not generally recognized as safe and effective for their above referenced uses and,therefore, these products are "new drugs" under section 201(p) of the FD&C Act, 21 U.S.C. 321(p). New drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from the FDA, as described in sections 301(d) and 505(a) of the FD&C Act, 21 U.S.C. 331(d) and 355(a). FDA approves a new drug on the basis of scientific data and information demonstrating that the drug is safe and effective. There are no FDA-approved applications in effect for any of the above mentioned products.

**Misbranded Drugs**

Your "Absolute Zero 99%+ CBD Isolate," "Freezing Point CBD Topical Cream," "Afterglow Healing Oil 100mg CBD Total," "Nano Enhancer Pure Nano CBD," "Nano Freezing Point CBD Topical Cream," "Asteroid Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," and "Nano Non Dairy Creamer," products are also misbranded within the meaning of section 502(f)(1) of the FD&C Act, 21 U.S.C. 352(f)(1), in that their labeling fails to bear adequate directions for use. "Adequate directions for use" means directions under which a layperson can use a drug safely and for the purposes for which it is intended. (See 21 CFR 201.5.) The aforementioned products are offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; therefore, adequate directions for use cannot be written so that a layperson can use these drugs safely for their intended purposes. FDA approved prescription drugs that bear their FDA-approved labeling are exempt from the requirements that they bear adequate directions for use by a layperson. However, your products are not exempt from the requirement that their labeling bear adequate directions for use, under 21 CFR 201.100(c)(2) and 201.115, because no FDA approved applications are in effect for them. The introduction or delivery for introduction into interstate commerce of these misbranded drugs violates section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

**301(ll) and Adulterated Human Foods**

We note that your Asteroid Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," and "Nano Non Dairy Creamer" products appear to be promoted as conventional human food. For example, your labeling describes the products, variously, as "delicious," "tasty treat[]", "sweetened flavor," and something that can be "[e]asily tossed into your lunch" or added to beverages. However, you should be aware that it is a prohibited act under section 301(ll) of the FD&C Act, 21 U.S.C. 331(ll), to introduce or deliver for introduction into interstate commerce any food to which has been added a drug approved under section 505 of the FD&C Act or for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public,. FDA has concluded that the prohibition in section 301(ll) applies to CBD.*1* There is an exception if the substance was marketed in food before the drug was approved or before the substantial clinical investigations involving the drug had been instituted. However, based on available evidence, FDA has concluded that this is not the case for CBD. FDA is not aware of any evidence that would call into question its current conclusion that section 301(ll) of the FD&C Act, 21 U.S.C. 331(ll), prohibits the introduction into interstate commerce of any food to which CBD has been added, but you may present FDA with any evidence bearing on this issue.

You should also be aware that, as defined in section 201(s) of the FD&C Act (21 U.S.C. 321(s)), the term "food additive" refers to any substance the intended use of which results in its becoming a component of any food, unless the substance is generally recognized as safe (GRAS) among qualified experts under the conditions of its intended use, or unless the substance meets a listed exception.**2**

Food additives require premarket approval based on data demonstrating safety. Any food additive that has not been approved for its intended use in food is deemed to be unsafe under section 409(a) of the FD&C Act (21 U.S.C. 348(a)), and causes the food to be adulterated under section 402(a)(2)(C)(i) of the FD&C Act, 21 U.S.C. 342(a)(2)(C)(i). Introduction of an adulterated food into interstate commerce is prohibited under section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

There is no food additive regulation which authorizes the use of CBD. We are not aware of any information to indicate that CBD is the subject of a prior sanction (see 21 CFR Part 181). Furthermore, we are not aware of any basis to conclude that CBD is GRAS for use in conventional foods. FDA's regulations in 21 CFR 170.30(a)-(c) describe the criteria for eligibility for classification of a food ingredient as GRAS. The use of a food substance may be GRAS based on either scientific procedures or, for a substance used in food before 1958, through experience based on common use in food (see 21 CFR 170.30).

We know of no basis for general recognition of safety for CBD based either on scientific procedures or common use in food prior to January 1, 1958. Based on our review of published, scientific literature, existing data and information do not provide an adequate basis to conclude that the use of CBD in food meets the criteria for GRAS status. Many unanswered questions and data gaps about CBD toxicity exist, and some of the available data raise serious concerns about potential harm from CBD. Our review of publicly available data associated with the one FDA-approved CBD drug, as well as our review of published scientific literature, identified potential for liver injury from CBD and potentially harmful interactions with certain drugs. In addition, studies in animals have shown that CBD can interfere with the development and function of testes and sperm, decrease testosterone levels, and impair sexual behavior in males. Therefore, based on our review, the use of CBD in conventional food products does not satisfy the criteria for GRAS status under 21 CFR 170.30.

FDA is not aware of any other exception to the food additive definition that would apply to CBD for use as an ingredient in a conventional food. Therefore, CBD added to a conventional food is a food additive under section 201(s) of the FD&C Act and is subject to the provisions of section 409 of the FD&C Act. Under section 409, a food additive is deemed unsafe unless it is approved by FDA for its intended use prior to marketing. CBD is not approved for use in any conventional food. Food containing an unsafe food additive within the meaning of section 409 is adulterated within the meaning of section 402(a)(2)(C)(i) of the FD&C Act. Introduction of an adulterated food into interstate commerce is prohibited under section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

**Unapproved New Animal Drugs**

During our review of your firm's website https://infinitecbd.com/shop/, FDA determined that your firm is marketing the unapproved new animal drugs "Pet Droppers" and "Launch Pad." Based on our review of your website, your "Pet Droppers" and "Launch Pad" products are drugs under section 201(g)(1) of the FD&C Act, 21 U.S.C. 321(g)(1), because they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in animals and/or intended to affect the structure or any function of the body of animals. Further, as discussed below, these products are unapproved new animal drugs and marketing them violates the FD&C Act.

Examples of claims observed on your website https://infinitecbd.com/shop/ that establish the intended use of your products as drugs include, but may not be limited to, the following:

On your product webpage for "**Pet Droppers**"

- "The combination of coconut oil allows for a healthier coat, clears up eczema, reduces allergies, improves digestion, and aids in arthritis and ligament problems."
- From product Reviews: "Infinite CBD, 09/26/19

Hi Michael,

Thank you for sharing your pup's CBD experience with us! We are thrilled to hear how well our Pet Droppers are helping with their separation anxiety. The combination of coconut oil and CBD also promotes a healthier coat, pain and inflammation relief, and improves digestion. We appreciate your feedback and look forward to doing business with you again soon!"

- "Infinite CBD, 09/18/19

Hi Helen,
Thank you for your review of our Pet Droppers! We are thrilled to hear how well this product is helping to relieve insomnia and anti inflammatory issues. We appreciate your feedback and we look forward to doing business with you again soon!"

On your product webpage for "**Launch Pad**"

- "**Key Ingredients**

**CBD Isolate** –… With the anti-inflammatory properties of CBD Isolate, this can help ease the irritation of chapped/dry skin as well as wounds.

**MCT Oil** – Famous for anti-aging properties, Vitamin E & A content, improving skin elasticity and collagen production and overall hydration.

**Beeswax** – Assists with anti-inflammatory and antibacterial properties while protecting against external irritants.

**Mango Butter** – Traditionally used to treat eczema and psoriasis, this butter provides fatty acids and antioxidants.

**Sunflower Oil** – Famous for the potential of reducing scar tissue, sunflower oil helps maintain skin health by supplying necessary nutrients and copious vitamin E.

**Rosemary** – Has the potential to protect skin cells from damage often caused by the sun and free radicals."

Your "Pet Droppers" and "Launch Pad" products are not generally recognized as safe and effective for the above referenced uses and, therefore, these products are "new animal drugs" under section 201(v) of the FD&C Act, 21 U.S.C. 321(v). To be legally marketed, a new animal drug must have an approved new animal drug application, conditionally approved new animal drug application, or index listing under sections 512, 571, and 572 of the FD&C Act, 21 U.S.C. 360b, 360ccc, and 360ccc-1. These products are not approved or index listed by the FDA, and therefore these products are considered unsafe under section 512(a) of the FD&C Act, 21 U.S.C. 360b(a), and adulterated under section 501(a)(5) of the FD&C Act, 21 U.S.C. 351(a)(5). Introduction of these adulterated drugs into interstate commerce is prohibited under section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

**301(ll) and Adulterated Animal Foods**

Moreover, to the extent that you market any of your products containing CBD as animal food, you should be aware that it is a prohibited act under section 301(ll) of the FD&C Act, 21 U.S.C. 331(ll), to introduce or deliver for introduction into interstate commerce any animal food to which has been added a drug approved under section 505 of the FD&C Act or for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public. Based on available evidence, FDA has concluded that the prohibition in section 301(ll) applies to CBD, as described above.

You should also be aware that, as defined in section 201(s) of the FD&C Act (21 U.S.C. 321(s)), the term "food additive" refers to any substance the intended use of which results in its becoming a component of any animal food, unless the substance is generally recognized as safe (GRAS) among qualified experts under the conditions of its intended use, or unless the substance meets a listed exception.[3]

There is no animal food additive regulation that authorizes the use of CBD. We are not aware of any information to indicate that CBD is the subject of a prior sanction (i.e., a sanction or approval granted prior to the enactment of the Food Additives Amendment of 1958 under the FD&C Act, the Poultry Products Inspection Act, or the Meat Inspection Act). Furthermore, we are not aware of any basis to conclude that CBD is GRAS for use in animal foods. FDA's regulations in 21 CFR 570.30(a)-(c) describe the criteria for eligibility for classification of an animal food ingredient as GRAS. The use of an animal food substance may be GRAS based on either scientific procedures or, for a substance used in animal food before 1958, through experience based on common use in animal food (see 21 CFR 570.30). We know of no basis for general recognition of safety for CBD based either on scientific procedures or common use in animal food prior to January 1, 1958. Based on our review of the publicly available literature, the data and information necessary to support the safe use of CBD in animal foods are lacking. In fact, literature reports have raised safety concerns for animals consuming CBD, including, but not limited to, male reproductive toxicity and liver toxicity.

Therefore, based on our review, the use of CBD in animal products does not satisfy the criteria for GRAS status under 21 CFR 570.30.

Under section 409, an animal food additive is deemed unsafe unless it is approved by FDA for its intended use prior to marketing. CBD is not approved for use in any animal food. Animal food containing an unsafe food additive within the meaning of section 409 is adulterated within the meaning of section 402(a)(2)(C)(i) of the FD&C Act. Introduction of an adulterated animal food into interstate commerce is prohibited under section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

The violations cited in this letter are not intended to be an all-inclusive statement of violations that exist in connection with your marketed products. You are responsible for investigating and determining the causes of the violations identified above and for preventing their recurrence or the occurrence of other violations. It is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations.

You should take prompt action to correct the violations cited in this letter. Failure to promptly correct violations may result in legal action without further notice, including, without limitation, seizure and/or injunction.

Please notify FDA in writing, within fifteen working days of receipt of this letter, of the specific steps you have taken to correct these violations. Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation. If you believe that your products are not in violation of the FD&C Act, include your reasoning and any supporting information for our consideration. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

Your response should be sent to U.S. Food and Drug Administration, Center for Drug Evaluation and Research/Office of Compliance/Office of Unapproved Drugs and Labeling Compliance, 10903 New Hampshire Avenue, WO51, Silver Spring, MD 20993-0002 or by e-mail to FDAADVISORY@fda.hhs.gov.

Sincerely,

/S/

Donald D. Ashley
Director
Office of Compliance
Center for Drug Evaluation and Research
Food and Drug Administration

/S/

Eric Nelson
Director of Compliance
Office of Surveillance & Compliance
Center for Veterinary Medicine
Food and Drug Administration

/S/

William A. Correll Jr.
Director
Office of Compliance
Center for Food Safety and Applied Nutrition
Food and Drug Administration

_____

*1* CBD is the active ingredient in the approved drug product Epidiolex. Furthermore, the existence of substantial clinical investigations regarding CBD has been made public. For example, two such substantial clinical investigations include GW Pharmaceuticals' investigations regarding Sativex and Epidiolex. (See Sativex Commences US Phase II/III Clinical Trial in Cancer Pain and GW Pharmaceuticals Receives Investigational New Drug (IND) from FDA for Phase 2/3 Clinical Trial of Epidiolex in the Treatment of Dravet Syndrome (Sativex Commences US Phase II/III Clinical Trial in Cancer Pain and GW Pharmaceuticals Receives Investigational New Drug (IND) from FDA for Phase 2/3 Clinical Trial of Epidiolex in the Treatment of Dravet Syndrome)). FDA considers a substance to be "authorized for investigation as a new drug" if it is the subject of an Investigational New Drug application (IND) that has gone into effect. Under 21 CFR 312.2, unless a clinical investigation meets the limited criteria in that regulation, an IND is required for all clinical investigations of products that are subject to section 505 of the FD&C Act.

*2* Under section 201(s) of the FD&C Act (21 U.S.C. 321(s)), the following types of substances are excluded from the food additive definition: (1) pesticide chemical residues in or on a raw agricultural commodity or processed food, (2) pesticide chemicals, (3) color additives, (4) substances used in accordance with a "prior sanction" (i.e., a sanction or approval granted prior to the enactment of the Food Additives Amendment of 1958 under the FD&C Act, the Poultry Products Inspection Act, or the Meat Inspection Act), (5) new animal drugs, and (6) dietary ingredients in or intended for use in a dietary supplement.

*3* Under section 201(s)(5) of the FD&C Act (21 U.S.C. 321(s)(5)), new animal drugs are excluded from the food additive definition. If a new animal drug is unsafe within the meaning of section 512 because it is not approved for use in animal food, then the animal food is adulterated under section 402(a)(2)(C)(ii) of the FD&C Act.

 More Warning Letters (/inspections-compliance-enforcement-and-criminal-investigations/compliance-actions-and-activities/warning-letters)