Ian A. Stewart (State Bar No. 250689)
*Ian.Stewart@wilsonelser.com*
Daniel H. Lee (State Bar No. 217001)
*Daniel.Lee@wilsonelser.com*
**WILSON, ELSER, MOSKOWITZ,**
      **EDELMAN & DICKER LLP**
555 Flower Street, Suite 2900
Los Angeles, California 90071-2407
Telephone:   (213) 443-5100
Facsimile:    (213) 443-5101

Thomas J. Norby (Minnesota State Bar No. 0184780)
*Appearing Pro Hac Vice*
*TNorby@brownsonnorby.com*
**BROWNSON • NORBY PLLC**
4800 Capella Tower
225 South Sixth Street
Minneapolis, Minnesota 55402
Telephone:  (612) 332-4020
Facsimile:   (612) 332-4025

Attorneys for Defendant
INFINITE PRODUCT COMPANY LLC,
d/b/a Infinite CBD

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM DASILVA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INFINITE PRODUCT COMPANY LLC, d/b/a Infinite CBD, a Colorado limited liability company<br><br>Defendant. | Case No.:    2:19-cv-10148 DMG<br>Hon. Dolly M. Gee<br><br>**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE, OR IN THE ALTERNATIVE TO STAY THE CASE PENDING GUIDANCE BY THE FDA**<br><br>Date:        February 21, 2020<br>Time:        9:30 a.m.<br>Location:  Courtroom 8C, 8th Floor<br>Judge:      Hon. Dolly M. Gee<br><br>Complaint Filed:   November 27, 2019 |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.   LEGAL STANDARD ................................................................................... 2

    A.   Federal Rule of Civil Procedure 12(b)(1) ............................................. 2

    B.   Federal Rule of Civil Procedure 12(b)(6)............................................. 2

    C.   Federal Rule of Civil Procedure 12(f) .................................................. 3

III.   PLAINTIFF LACKS STANDING TO SUE UNDER ARTICLE III ............ 4

IV.   PLAINTIFF'S CLAIMS ARE PREEMPTED ............................................... 5

V.   THE COMPLAINT FAILS TO STATE A CLAIM ...................................... 6

    A.   Plaintiff's Failure to Serve A 30-Day Letter Before the Filing The
        Present Lawsuit Is Jurisdictional and Requires Dismissal Of
        Plaintiff's CLRA Damages Claim ........................................................ 6

    B.   Plaintiff's UCL, FAL And CLRA Causes Of Action Must Be
        Dismissed Because He Cannot Establish The Necessary Causal
        Link Between Any Purported Misrepresentation Or False
        Advertisement By Defendant And The Decision To Purchase A
        CBD Isolate Dropper. ........................................................................... 7

    C.   Plaintiff Fails to State a Cause of Action for Breach of Express
        Warranty.............................................................................................. 10

    D.   Plaintiff Fails to State a Cause of Action for Breach of Implied
        Warranty of Merchantability............................................................... 11

    E.   Plaintiff's Cause of Action for Declaratory Relief under the
        Declaratory Judgment Act Should be Dismissed ............................... 12

VI.   PLAINTIFF'S NON-CALIFORNIA CLAIMS MUST BE DISMISSED
      AND HIS MULTISTATE CLASS ALLEGATIONS STRICKEN.............. 13

    A.   Plaintiff Lacks Standing Under the Laws of Other States.................. 14

    B.   The Non-California Multistate Class Allegations Should Be
        Stricken .............................................................................................. 14

       1.     The Non-California Multistate Class Lacks a Class Representative.............................................................................. 14

       2.     The Non-California Multisate Class Lacks Commonality and Predominance.................................................................... 14

VII.   IF THE COURT DOES NOT DISMISS OR STRIKE THE COMPLAINT, THE COURT SHOULD STAY THIS CASE PENDING FURTHER GUIDANCE BY THE FDA AS TO CBD PRODUCTS. ........ 18

    A.    The Forthcoming CBD Guidelines by the FDA ................................. 18

    B.    The Primary Jurisdiction Doctrine Favors Staying this Action.......... 21

VIII.  CONCLUSION ............................................................................ 24

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

3566398v.2

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004)..............................................................13

*Air Line Pilots Ass'n v. Miller*,
   523 U.S. 866 (1998) .............................................................................18

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
   738 F.3d 1350 (Fed. Cir. 2013) ...........................................................15

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011)...........................................................10, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................3

*Assoc. of Am. Med. Coll. v. United States*,
   217 F.3d 770 (9th Cir. 2000)..............................................................2, 3

*Astiana*,
   783 F.3d at 760......................................................................................19

*Baron v. Reich*,
   13 F.3d 1370 (9th Cir. 1994)..................................................................3

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014)..............................................................14

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009).................................................................11

*Bower v. AT&T Mobility, LLC*,
   196 Cal.App.4th 1545 (2011) .................................................................7

*Brown v. Danone*,
   2018 U.S. Dist. LEXIS 74692, * (N.D. Cal. May 1, 2018) .................5, 6

*Cardinal Health 301, Inc. v. Tyco Elec. Corp.*,
   169 Cal. App. 4th 116 (2008) ...............................................................11

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

*Cattie v. Wal-Mart Stores, Inc.*
  504 F.Supp.2d 939 (S.D. Cal.2007) .................................................. 6, 8

*Chacanaca v. Quaker Oats Co.*,
  No. C 10– 0502 RS, 2010 WL 4055954 (N.D. Cal. Oct. 14, 2010) ..................... 8

*Chamberlan v. Ford Motor Co.*
  369 F.Supp.2d 1138 (N.D. Cal. 2005) ................................................. 8

*Chronicle Publ'g Co. v. Nat'l Broad. Co.*,
  294 F.2d 744 (9th Cir. 1961) ....................................................... 20

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................. 12

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008) ...................................................... 21

*Clinton v. Jones*,
  520 U.S. 681 (1997) ................................................................ 18

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ....................................................... 18

*Cole v. GMC*,
  484 F.3d 717 (5th Cir. 2007) ....................................................... 17

*Colwell v. Dep't of Health & Human Servs.*,
  558 F.3d 1112 (9th Cir. 2009) ....................................................... 3

*Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*,
  642 F.3d 849 (9th Cir. 2011) ....................................................... 12

*Crosby v. Nat'l  Trade*,
  *530 U.S. 363, 373 (2000)* ........................................................... 5

*Daniels-Hall v. Nat'l Educ. Assn*,
  629 F.3d 992 (9th Cir. 2010) ........................................................ 3

*Daro*,
  151 Cal.App.4th 1099 ................................................................ 7

*Davis v. Chase Bank U.S.A., N.A.*
  650 F.Supp.2d 1073 (C.D. Cal. 2009) ................................................. 6

v

3566398v.2

*Doe v. Texaco, Inc.*,
   2006 WL 2053504 (N.D. Cal. July 21, 2006)..........................................................8

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ..................................................................11

*Dunbar v. Medtronic, Inc.*,
   2014 U.S. Dist. LEXIS 94920 (C.D. Cal. 2014)....................................................11

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ...............................................................................7

*eCash Techs. Inc. v. Guagliardo*,
   127 F.Supp.2d 1069 (C.D. Cal. 2000) ....................................................................3

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993)..................................................................................4

*Friedman v. 24 Hour Fitness USA, Inc.*,
   580 F. Supp. 2d 985 (C.D. Cal. 2008) .....................................................................4

*Garrison v. Whole Foods Market Group, Inc.*,
   No. 13-05222-CV, 2014 WL 2451290 (N.D. Cal. June 2, 2014).........................18

*Gartin v. S & M NuTec LLC*
   (C.D. Cal. 2007) 245 F.R.D. 429.............................................................................8

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ...............................................................................................13

*Gianino v. Alacer Corp.*,
   846 F. Supp. 2d 1096 (C.D. Cal. 2012) .................................................................15

*Greenfield*,
   18 F. Supp.3d at 1376 ............................................................................................22

*Gutierrez v. Wells Fargo & Co.*,
   2009 WL 1246689 (N.D. Cal. May 5, 2009) ...........................................................7

*Hale v. Sharp Healthcare*,
   183 Cal. App. 4th 1373 (2010) ...............................................................................7

*Hall v. Time, Inc.*,
   158 Cal.App.4th 847 (2008) ....................................................................................8

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

3566398v.2

*Herazo*,
  2015 U.S. Dist. LEXIS 96811.............................................................................23

*In re Ferrero Litig.*,
  794 F.Supp.2d 1107 (S.D. Cal. 2011)...................................................................9

*In re Hitachi TV Optical Block Cases*,
  2011 U.S. Dist. LEXIS 135 (S.D. Cal. 2011) ......................................................17

*In re iPhone 4S Consumer Litig.*,
  2014 U.S. Dist. LEXIS 19363 (N.D. Cal. 2014) ..........................................10, 11

*In re Tobacco II Cases*,
  46 Cal.4th 298 (2009) .............................................................................................7

*In re: Dalkon Shield IUD Products Liability Litigation*,
  693 F.2d 853 (9th Cir. 1982)................................................................................17

*Kane v. Chobani, LLC*,
  No. 14-15670, 2016 WL 1161782 (9th Cir. Mar. 24, 2016) .........................18, 19

*Karim v. Hewlett-Packard Co.*,
  2014 U.S. Dist. LEXIS 65742, at *23-25 (N.D. Cal. 2014) ................................17

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012) .........................................................................14

*Keith v. Buchanan*,
  (1985) 173 Cal.App.3d 13.....................................................................................10

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ................................................................................................3

*Kowalsky v. Hewlett-Packard Co.*,
  No.:  10–CV–02176–LHK, 2011 WL 1466136 (N.D. Cal. Apr. 15, 2011)....8, 15

*Laster v. T-Mobile USA, Inc.*
  407 F.Supp.2d 1181 (S.D. Cal. 2005)..................................................................6, 7

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005)...............................................................................18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................4

*Mazza,*
    666 F.3d at 589-94 ............................................................................... 15

*McDonnell Douglas Corp. v. Thiokol Corp.*
    124 F.3d 1173 (9th Cir. 1997) .............................................................. 10

*McVicar v. Goodman Global, Inc.,*
    2015 WL 4945730 (C.D. Cal. Aug. 20, 2015) ....................................... 9

*Medical Diagnostic,*
    2018 WL 784456 ................................................................................... 13

*Neu v. Terminix Intern., Inc.,*
    No. C 07–6472 CW, 2008 WL 2951390 (N.D. Cal. July 24, 2008) ...... 8

*New Image Global, Inc. v. National Tobacco Company LP,*
    No. 09-06761—DMG (DTBx), 2010 WL 11506711 (C.D. Cal. March 15,
    2010) ...................................................................................................... 13

*Nordberg v. Trilegiant Corp.*
    (ND CA 2006) 445 F.Supp.2d 1082 ..................................................... 15

*Pardini v. Unilever United States, Inc.,*
    961 F. Supp. 2d 1048 (N.D. Cal. 2013) ................................................ 14

*Ralston v. Mortgage Inv. Group, Inc.,*
    2012 U.S. Dist. LEXIS 45545 (N.D. Cal. Mar. 30, 2012) .................... 15

*RDF Media Ltd. v. Fox Broad. Co.,*
    372 F. Supp. 2d 556 (C.D. Cal. 2005) .................................................... 4

*Rhoades v. Avon Products, Inc.,*
    504 F.3d 1151 (9th Cir. 2007) .............................................................. 18

*Rhoades,*
    504 F.3d at 1165 ................................................................................... 24

*Sanders v. Apple, Inc.,*
    672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................. 17

*Sateriale v. R.J. Reynolds Tobacco Co.*
    697 F3d 777 (9th Cir. 2012) ................................................................... 8

*Schwartz v. Upper Deck Co.,*
    183 F.R.D. 672 (S.D. Cal. 1999) .......................................................... 17

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

3566398v.2

*Skybolt Aeromotive Corp. v. Milspec Prods.*,
  No. 5:16-cv-616-oc-PRL, 2017 U.S. Dist. LEXIS 88597, at *29 (M.D.
  Fla. Jun. 9, 2017) ................................................................................................. 22

*Spokeo v. Robins*,
  136 S.Ct. 1540 (2016) ............................................................................................ 4

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ....................................................................................... 15

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
  307 F.3d 775 (9th Cir. 2002) ......................................................................... 18, 21

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................................. 3

*Viggano v. Johnson & Johnson*,
  Case No. CV 14-7250, Dkt. # 55 (C.D. Cal. June 21, 2016) .............................. 19

*Viggiano*,
  944 F. Supp. 2d at 896 ......................................................................................... 11

*Von Grabe v. Sprint PCS*
  312 F.Supp.2d 1285 (S.D. Cal. 2003) .................................................................... 7

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ................................................................................ 3

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ............................................................................................. 12

**Statutes**

7 U.S.C. § 1639(o)-(s) ................................................................................................ 6

21 U.S.C. § 343 ........................................................................................................... 2

21 U.S.C. § 343(q) ...................................................................................................... 2

21 U.S.C. § 343-1(a)(4) .............................................................................................. 2

28 U.S.C. § 2201 ....................................................................................................... 12

Agricultural Marketing Act of 1964 § 297A ............................................................ 20

Cal. Bus. & Prof. Code § 17200 ................................................................................. 1

Cal. Bus. & Prof. Code § 17500 ...................................................................1

Cal. Bus. & Prof. Code, § 17203 ...................................................................7

Cal. Bus. & Prof. Code, § 17204 ...................................................................7

Cal. Bus. & Prof. Code, § 17535 ...................................................................7

Cal. Civ. Code § 1750...................................................................................1

Cal. Civ. Code § 1782...................................................................................6

Cal. Com. Code § 2607(3)(A) .....................................................................12

CO. Rev. Stat., §35-61-108(2) ....................................................................16

Consumer Legal Remedies Act ...............................................1, 5, 6, 7, 8, 10, 15

Federal Food, Drug and Cosmetics Act .......................................................2

Florida Stat., §581.217 (2019 ....................................................................16

Ind. Code Ann. §24-4-21-4 (2018)...........................................................16, 17

LA. Stat. Ann. § 3:1482(C)(3)(2019)...........................................................  16

OK SB238 (2019)
     (available at https://legiscan.com/OK/text/SB238/id/2010779) .................16

230-RICR-80-10-1 (2018) ..........................................................................16

Tex. Code Ann. Health & Safety §443.205(a)(2019) ....................................16

Utah Admin. Code R68-26-5(3) (2019) ....................................  16, 17

**Other Authorities**

Agriculture, Rural Development, Food and Drug Administration, and
     Related Agencies Appropriations Bill, 2020,
     116 S. Rpt. 110, (Sept. 2019)................................................................16

*FDA Acting Commissioner's Remarks to the 2019 FDLI Annual Conference*,
     (May 2, 2019)
     https://www.fda.gov/news-events/speeches-fda-officials/fda-acting-

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

3566398v.2

commissioners-remarks-2019-fdli-annual-conference-05022019
(last visited Oct. 18, 2019) ................................................................................ 17

*FDA Press Release*
*https://www.fda.gov/news-events/press-announcements/fda-warns-15-*
*companies-illegally-selling-various-products-containing-cannabidiol-agency-*
*details* ................................................................................................................20

*New York Dep't of Agriculture and Markets, Frequently Asked Questions*
*(July 16, 2019)*
*https://agriculture.ny.gov/system/files/documents/2019/10/CBD_FAQs.pdf)* (last
visited Jan. 17, 2020)…………………………………………….……………   16

*Scientific Data and Information About Products Containing Cannabis or*
*Cannabis-Derived Compounds;*
*U.S. Food & Drug Admin., Public Hearing; Request for Comments*
84 FR 12969 (Apr. 3, 2019) .............................................................................. 15

State of Alabama, Office of the Attorney General, Public Notice
(Updated August 14, 2019)
https://www.alabamaag.gov/Documents/News/PUBLIC%20NOTICE%20RE%2
0CBD%20August%202019.pdf) (last visited Jan. 17, 2020)………………… 16

U.S. Congressional Bill 5587…………………………………………………… 20

U.S. Senate Bill 2522........................................................................................16

**Rules**

Fed. R. Civ. P. Rule 12(b)(1)..........................................................................2, 3

Fed. R. Civ. P. Rule 12(b)(6)...............................................................................3

Fed. R. Civ. P. Rule 12(f) ....................................................................................4

Fed. R. Civ. P. Rule 23 ......................................................................................14

**Constitutional Provisions**

U.S. Const., Art. III.............................................................2, 4, 5, 13, 24

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

3566398v.2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff DaSilva is a California citizen and a resident of Los Angeles County. (Compl. ¶ 15.)  He allegedly purchased a CBD Isolate Dropper on November 12, 2018, through the Defendant's website for the amount of $43.15.  CBD Isolate Dropper is a product sold by the Defendant containing cannabidiol ("CBD"), a naturally-occurring, indigenous nutrient of the plant *Cannabis sativa L.*  Plaintiff, however, appears to have had no other experience with Defendant or the CBD Isolate Dropper, other than simply buying it.  Plaintiff does not allege that he used the product. He does not allege dissatisfaction with the product. He does not allege physical harm. He does not allege purchasing any CBD based product from Defendant other than the CBD Isolate Dropper. Plaintiff instead makes conclusory allegations of misrepresentation and false advertisement, not based on any personal experience, but based on language lifted from a warning letter sent recently to the Defendant by the FDA, which is attached as an exhibit to the Complaint.  On that basis, Plaintiff asserts claims under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq.*), False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500 *et seq.*), and Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 *et seq.*), as well as claims for breach of implied warranty, and breach of express warranty under California law, and for declaratory relief under the Declaratory Judgment Act**.** As discussed in detail below, Plaintiff lacks standing to assert his claims, and fails to state a claim for which relief can be granted.

Although Plaintiff relies entirely upon the FDA warning letter as the basis for his allegations that the CBD Isolate Dropper is illegal under federal law, the FDA makes no statement or allegation with respect to the CBD Isolate Dropper. The warning letter pertains only to other products sold by Defendant, none of which were purchased or consumed by Plaintiff.

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE**

Furthermore, Plaintiff improperly seeks to represent class members for several classes of products that Plaintiff did not purchase, and from which he cannot have suffered an injury. Specifically, Plaintiff seeks recovery on both an individual and class basis for alleged damage or loss arising from ten (10) different CBD products, including a wide variety of both consumable and topical consumer products.

Plaintiff also alleges statutory class allegations claims on behalf purported non-California class members under the consumer protection and warranty laws of various other states.  As discussed in detail below, Plaintiff's non-California class claims must be stricken as the law in the Ninth Circuit is clear that he cannot maintain such a claim.

Finally, in the event the Court does not dismiss nor strike the Complaint, Defendant respectfully submits that the Court should abstain based on the primary jurisdiction doctrine until the Food & Drug Administration ("FDA") has provided further clarification. The FDA is poised to issue regulations and guidance on hemp-based products such as the CBD Isolate Dropper. As the Court is aware, dietary ingredients are regulated by a comprehensive regulatory scheme pursuant to the Federal Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 343, *et seq*. Congress determined that the FDCA labeling standards must be followed nationwide and uniformly, and thus the FDCA has an express preemption provision which provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce…any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title."  21 U.S.C. § 343-1(a)(4).

## II.  **LEGAL STANDARD.**

### A.  **Federal Rule of Civil Procedure 12(b)(1)**

Dismissal is proper under Fed. R. Civ. P. Rule 12(b)(1) if the plaintiff does not satisfy Article III standing requirements.  *See e.g. Assoc. of Am. Med. Coll. v.*

2

1    *United States*, 217 F.3d 770, 778 (9th Cir. 2000).  Similarly, Rule 12(b)(1)

2    dismissal is proper if the court lacks subject matter jurisdiction over the plaintiff's

3    claim for reasons other than, or in addition to, lack of standing.  *Kokkonen v.*

4    *Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Motions to dismiss for lack of

5    subject matter jurisdiction may attack jurisdiction facially or factually.  *See White*

6    *v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In resolving a factual attack, the

7    district court may consider extrinsic evidence.  *See id.*; *Colwell v. Dep't of Health*

8    *& Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009)

9        **B.**     **Federal Rule of Civil Procedure 12(b)(6)**

10        "[T]o survive a motion to dismiss, 'a complaint must contain sufficient factual

11    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

12    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]hreadbare recitals of the elements

13    of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Id.*

14    at 678.   The court is not required to accept as true allegations that are merely

15    conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See id.* In

16    deciding a Rule 12(b)(6) motion to dismiss, the inquiry is confined to the allegations

17    of the complaint, material properly submitted with the complaint, and matters that

18    are proper subjects of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908

19    (9th Cir. 2003); *Baron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) "[A] court may

20    consider documents which are not physically attached to the complaint but 'whose

21    contents are alleged in [the] complaint and whose authenticity no party questions.'"

22    *eCash Techs. Inc. v. Guagliardo*, 127 F.Supp.2d 1069, 1074 (C.D. Cal. 2000)

23    (citations omitted).  A motion to dismiss may be granted based on an affirmative

24    defense where the allegations in a complaint are contradicted by matters properly

25    subject to judicial notice.  *Daniels-Hall v. Nat'l Educ. Assn*, 629 F.3d 992, 998-99

26    (9th Cir. 2010).

27        **C.**     **Federal Rule of Civil Procedure 12(f)**

28

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE**

3566398v.2

1    Federal Rule of Civil Procedure 12(f) provides that a court "may strike from

2  a pleading an insufficient defense or any redundant, immaterial, impertinent, or

3  scandalous matter." Motions to strike can be granted if the allegations have no

4  possible relation to the controversy and may cause prejudice to one of the parties.

5  *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008);

6  *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005). The

7  Ninth Circuit has defined "immaterial" matter as "that which has no essential or

8  important relationship to the claim for relief or the defenses being pleaded" and

9  "impertinent" matter as "statements that do not pertain, and are not necessary, to the

10  issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

11  **III.    PLAINTIFF LACKS STANDING TO SUE UNDER ARTICLE III**

12    Article III standing requires a plaintiff to have '(1) suffered an injury in fact,

13  (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

14  likely to be redressed by a favorable judicial decision.'" *See Spokeo v. Robins*, 136

15  S.Ct. 1540 (2016)). "'To establish injury in fact, a plaintiff must show that he or she

16  suffered 'an invasion of a legally protected interest' that is 'concrete and

17  particularized' and 'actual or imminent, not conjectural or hypothetical.'" *See Lujan

18  v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

19    Here, Plaintiff seeks redress for many products other than the CBD Isolate

20  Dropper that he purchased from the Defendant.  Plaintiff seeks redress in the

21  Complaint for "Products" or "CBD Products" sold by the Defendant, defined as

22  "Absolute Zero 99% + CBD Isolate," "Freezing Point CBD Topical Cream,"

23  "Afterglow Healing Oil 100 mg CBD Total," "Nano Enhancer Pure Nano CBD,"

24  "Nano Freezing Point CBD Topical Cream," "Asteroid Gummies," "Sour Asteroid

25  Gummies," "Sweetened Dropper," "Isolate Dropper", and "Nano Non Dairy

26  Creamer." (Compl. ¶ 1.)  Under Article III, Plaintiff has no standing pertaining to

27  products he did not purchase and therefore cannot allege claims in that regard.

28

Moreover, these ten products vary widely. Some are consumable and others are meant to be applied topically. The consumable products have different means of ingestion, with some being edible and others ingested sublingually. The products are purchased by consumers for widely varying reasons, and are used by consumers very differently. Plaintiff, however, has no connection whatsoever to any of the subject products but one.

Plaintiff alleges that he purchased a single product on November 12, 2018 – a CBD Isolate Dropper, for which he paid the amount of $43.10. Plaintiff fails to allege any injury, harm or loss based on his personal experience with the product. He does not allege that he consumed the product.  He does not identify any specific statement or representation made by Defendant pertaining to the CBD Isolate Dropper, nor does he allege that he saw or relied on any unidentified representation made by Defendant when he decided to purchase the CBD Isolate Dropper. Although Plaintiff predicates all of the causes of action in the Complaint on the alleged federal illegality of the CBD Isolate Dropper based on the subject FDA warning letter, nowhere in the warning letter is there any reference or allegation pertaining to the CBD Isolate Dropper. The statements within the FDA warning letter pertain only to other products sold by Defendant, none of which were purchased or consumed by Plaintiff.

Based on the foregoing, there is no actual or concrete harm nor one that is traceable to the Defendant.  Plaintiff lacks standing to sue under Article III. The Complaint therefore must be dismissed in its entirety.

## IV.    <u>PLAINTIFF'S CLAIMS ARE PREEMPTED</u>

Where state law claims stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, as laid out in a comprehensive federal regulatory scheme, those claims are impliedly preempted by that federal scheme. See *Crosby v. Nat'l   Trade  , 530 U.S. 363, 373 (2000).  In *Brown v. Danone* a food product mislabeling class action case where the plaintiffs'

asserted violation of California consumer protection laws CLRA and UCL, the court found preemption under the Organic Food Production Act ("OFPA") and dismissed the complaint.  See e.g. *Brown v. Danone*, 2018 U.S. Dist. LEXIS 74692, * (N.D. Cal. May 1, 2018).

In the present case, the Agriculture Improvement Act of 2018 (the "2018 Farm Bill"), Pub. L. No. 115-334, 132 Stat. 4908–11, explicitly recognized the FDA's authority to regulate products containing cannabis-derived compounds, including hemp-derived products under the FDCA. 7 U.S.C. §§ 1639(o)–(s).  Thus, state law is preempted by regulations promulgated by the FDA, and the FDCA which provides a comprehensive scheme for regulating the product at issue in this case.  The court should dismiss Plaintiff's state law claims.

## V.    THE COMPLAINT FAILS TO STATE A CLAIM

### A.    Plaintiff's Failure to Serve A 30-Day Letter Before Filing The Present Lawsuit Is Jurisdictional And Requires Dismissal Of Plaintiff's CLRA Damages Claim.

California Civil Code Section 1782 provides that "thirty days or more" prior to filing a CLRA action "for damages" the consumer "shall" notify the potential defendant "of the particular alleged violation" and that he or she "correct, repair, replace or otherwise rectify the goods or services alleged to be in violation of the CLRA.  The "30-day letter" has to be in writing sent by certified or registered mail, return receipt requested, to the place where the transaction occurred, such person's principal place of business within California, or, if neither will effect actual notice, the office of the Secretary of State of California. *See id.*  Federal courts in California have found that failure to serve the 30-day letter is jurisdictional and requires dismissal of the CLRA damages claim. *Davis v. Chase Bank U.S.A., N.A.* 650 F.Supp.2d 1073, 1088-1089 (C.D. Cal. 2009); *Cattie v. Wal-Mart Stores, Inc.* 504 F.Supp.2d 939, 950 (S.D. Cal.2007); *Laster v. T-Mobile USA, Inc.* 407 F.Supp.2d

1181, 1195-1196 (S.D. Cal. 2005); *Von Grabe v. Sprint PCS* 312 F.Supp.2d 1285, 1304 (S.D. Cal. 2003).

Here, Plaintiff fails to allege that he gave such notice to the Defendant before filing the present lawsuit on November 27, 2019.  That is because he can't.  A CLRA demand letter was sent but **after** the Complaint was filed, on December 2, 2019.  *See* Ex. 1 to RJN.  Accordingly, Plaintiff's claim for damages under the CLRA should be dismissed.

**B.**  **Plaintiff's UCL, FAL And CLRA Causes Of Action Must Be Dismissed Because He Cannot Establish The Necessary Causal Link Between Any Purported Misrepresentation Or False Advertisement By Defendant And The Decision To Purchase A CBD Isolate Dropper.**

A plaintiff's injury must come "as a result of" the unfair competition or a violation of the false advertising law."  Bus. & Prof. Code, §§ 17203, 17204, 17535; *In re Tobacco II Cases*, 46 Cal.4th 298, 328 (2009); *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1382 (2010); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1359 (2010); *Bower v. AT&T Mobility, LLC*, 196 Cal.App.4th 1545, 1554 (2011).  "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of causal connection or reliance on the alleged misrepresentations."  *Id.*  "[T]here must be a causal connection between the harm suffered and the unlawful business activity.  That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law."  *Daro*, supra, 151 Cal.App.4th at p. 1099; *Gutierrez v. Wells Fargo & Co.*, 2009 WL 1246689 *4 (N.D. Cal. May 5, 2009).

In other words, there must be evidence that the plaintiff both *perceived and relied upon* Defendant's advertisements or misrepresentations in entering into the transactions at issue.  *Laster*, 40 F. Supp. at 1194.  Dismissal of a UCL or FAL claim is appropriate if the plaintiff cannot prove that she "entered into the transaction *as a*

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE**

*result of* the alleged misrepresentations. *Id.* (dismissing UCL claim because the named plaintiff did not allege he saw, read, or in any way relied on the allegedly false advertisements); *see also Doe v. Texaco, Inc.*, 2006 WL 2053504 (N.D. Cal. July 21, 2006) (emphasis in original) ("[T]he 'as a result of language in the statute means that, for a plaintiff to state a claim, he or she must allege that they *relied* upon the defendants acts of unfair competition and, *as a result*, suffered injury in fact.); *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 849 (2008) ("The phrase 'as a result of in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation.). "[A]ctual reliance is an element of a CLRA claim." *Cattie v. Wal-Mart Stores, Inc.* 504 F.Supp.2d 939, 946 (S.D. Cal. 2007) ("California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation"); *Chamberlan v. Ford Motor Co.* 369 F.Supp.2d 1138, 1147 (N.D. Cal. 2005) (relief under CLRA requires proof of loss causation); *Gartin v. S & M NuTec LLC* (C.D. Cal. 2007) 245 F.R.D. 429, 440 ("causation is a requirement of relief under CLRA"); *Sateriale v. R.J. Reynolds Tobacco Co.* 697 F3d 777, 793 (9th Cir. 2012) (affirming the district court's dismissal of a CLRA claim due to lack of reliance on the defendant's announcement terminating a rewards program).

Because of similarity in standards utilized, courts often address UCL, FAL and CLRA claims in tandem. *See e.g. Kowalsky v. Hewlett-Packard Co.*, No.: 10–CV–02176–LHK, 2011 WL 1466136, at *4 (N.D. Cal. Apr. 15, 2011); *Neu v. Terminix Intern., Inc.*, No. C 07–6472 CW, 2008 WL 2951390, at *3–4 (N.D. Cal. July 24, 2008) (analyzing UCL and FAL claims together); *Chacanaca v. Quaker Oats Co.*, No. C 10– 0502 RS, 2010 WL 4055954, at * 11–12 (N.D. Cal. Oct. 14, 2010) (same); *Sateriale v. R.J. Reynolds Tobacco Co.* 697 F3d 777, 793 (9th Cir. 2012) (analyzing UCL and CLRA claims together).

Here, the Complaint fails to meet the causation requirement. Plaintiff did not perceive or rely upon any advertisement or representation made by the Defendant

8

before he decided to purchase a CBD Isolate Dropper. (Compl. ¶ 13.)  There is no allegation in the Complaint demonstrating any causal link between Plaintiff's decision to purchase the product at issue and any alleged label claim, marketing statement, advertisement or representation. Plaintiff instead makes conclusory allegations of misrepresentation and false advertisement, not based on any personal experience, but based on language lifted from a warning letter sent recently to the Defendant by the FDA, which is attached as an exhibit to the Complaint. Furthermore, Defendant's website is dynamic. There will be no way for Plaintiff to now identify what may have been represented before or after the alleged purchase date of November 12, 2018. *See McVicar v. Goodman Global, Inc.*, 2015 WL 4945730 (C.D. Cal. Aug. 20, 2015) (plaintiffs, purchaser of a new home never visited defendant's website nor read any advertisement prior to purchasing defendant's allegedly defective heating and air conditioning unit, and thus could not prove causation and could not maintain a UCL claim); *In re Ferrero Litig.*, 794 F.Supp.2d 1107, 1112  (S.D. Cal. 2011) (UCL plaintiffs who sued manufacturer of Nutella over health claims on label and on website lacked standing to sue over website claims where they failed to allege that they actually viewed the website before making their purchase decision.)

Moreover, it bears repeating that although Plaintiff predicates all of the causes of action in the Complaint on the alleged federal illegality of the CBD Isolate Dropper based on the subject FDA warning letter, nowhere in the warning letter is there any reference or allegation pertaining to the CBD Isolate Dropper. The statements within the FDA warning letter pertain only to other products sold by Defendant, none of which were purchased or consumed by Plaintiff.

Although the above analysis is specific to Plaintiff's failure to causally link any cause of action under the California consumer protection statutes to his alleged purchase of the CBD Isolate Dropper, it goes without saying that Plaintiff also has

1  no colorable claim under the subject statutes with respect to any of the remaining
2  CBD products that he did not purchase or use.

3       Based on the foregoing, dismissal is proper as to Plaintiff's claims under the
4  UCL, FAL and CLRA.

5       **C.     Plaintiff Fails to State a Cause of Action for Breach of Express**
6       **Warranty.**

7       "[A] breach of express warranty claim requires that the plaintiff identify a
8  '*specific and unequivocal* written statement' about the product that constitutes an
9  '*explicit guarantee*.'" *In re iPhone 4S Consumer Litig*., 2014 U.S. Dist. LEXIS
10 19363, at *28-29 (N.D. Cal. 2014). Plaintiff must also demonstrate that an
11 affirmation or promise allegedly made the seller was "part of the basis of the
12 bargain." *See*, *e.g.*, *McDonnell Douglas Corp. v. Thiokol Corp.* 124 F.3d 1173, 1176
13 (9th Cir. 1997); *Keith v. Buchanan*, (1985) 173 Cal.App.3d 13, 20.

14      Here, Plaintiff's claim must be dismissed he fails to identify any affirmation,
15 based on his personal experience, made by the Defendant to him, that constitutes an
16 "explicit guarantee."  Plaintiff also fails to show how a purported express warranty
17 was the part of the basis of the bargain.

18      Instead, Plaintiff merely pleads as follows: "Through the Products' labels and
19 advertising, Defendant made affirmations of fact or promises, or description of
20 goods, described above, which were 'part of the basis of the bargain,' in that Plaintiff
21 and the Class purchased the Products in reasonable reliance on those statements."
22 (Compl. ¶ 15.)  These vague and conclusory allegations fail to identify a specific and
23 unequivocal written statement about the product that constitutes an explicit
24 guarantee, as required under California law to plead a viable cause of action for
25 breach of express warranty.

26      Furthermore, to state a warranty claim, a plaintiff's complaint must "plead
27 that notice of the alleged breach was provided to the seller within a reasonable
28 time." *Alvarez v. Chevron Corp*., 656 F.3d 925, 932 (9th Cir. 2011). As a matter

10

of law, notice is not provided "within a reasonable time" if it was not given "pre-suit." *Id.*; *see also iPhone 4S*, 2014 U.S. Dist. LEXIS 19363, at *28-29. Here, Plaintiff does not allege that he provided pre-suit notice to Defendant of any asserted breach of warranty. This requires dismissal. *See Dunbar v. Medtronic, Inc.*, 2014 U.S. Dist. LEXIS 94920, at *21 (C.D. Cal. 2014). The purpose of the pre-suit notice requirement is "to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court," *Alvarez*, 656 F.3d at 932, or "to afford the seller an opportunity to engage in settlement discussion and prepare for litigation." *Cardinal Health 301, Inc. v. Tyco Elec. Corp.*, 169 Cal. App. 4th 116, 137 (2008). Despite Plaintiff's claim, notice cannot be provided by filing a lawsuit. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929-30 (N.D. Cal. 2012).

For these reasons, Plaintiff has not pled a viable cause of action for breach of any express warranty pertaining to the CBD Isolate Dropper. It again goes that saying that Plaintiff has no colorable claim for breach of express warranty with respect to any of the remaining CBD products that he did not purchase or use.

**D.  Plaintiff Fails to State a Cause of Action for Breach of Implied Warranty of Merchantability.**

Plaintiff does not sufficiently plead that the CBD Isolate Dropper was non-merchantable. To be "merchantable," goods must merely be "fit for [the]ordinary purpose[] for which such goods are used." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009). This "does not impose a . . . requirement that goods precisely fulfill the expectation of the buyer," or that they comply with every promise the manufacturer has made (which is the role of express warranty). *Viggiano*, 944 F. Supp. 2d at 896. "Instead, it provides for a minimum level of quality." *Id.* Thus, "[a] plaintiff who claims a breach of the implied warranty of merchantability must show that the product did not possess *even the most basic degree of fitness* for ordinary use." *Id.* (emphasis added) (internal quotations omitted).

11

Here, Plaintiff does not allege that the CBD Isolate Dropper lacks "even the most basic degree of fitness for ordinary use." Plaintiff instead makes conclusory allegations about many products he did not even purchase, and not based on any personal experience, but based on language lifted from a warning letter sent recently to the Defendant by the FDA. None of these allegations establish that the CBD Isolate Dropper was non-merchantable. *Id*.

Plaintiff also fails to allege that he took reasonable steps to notify Defendants within a reasonable time that the product was not suitable as he is required to do. Cal.Com.Code § 2607(3)(A). Therefore, Plaintiff's claim of breach of implied warranty of merchantability should be dismissed both with respect to any alleged implied warranty pertaining to the CBD Isolate Dropper and with respect to any of the remaining CBD products that he did not purchase or use.

### E.    Plaintiff's Cause of Action for Declaratory Relief under the Declaratory Judgment Act Should be Dismissed.

Declaratory relief is an equitable remedy. It is not an independent cause of action. The Declaratory Judgment Act, 28 U.S.C. § 2201, does not create any substantive rights or causes of action. It is "a remedial arrow in the district court's quiver; it create[s] an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). A district court may, "in the sound exercise of its judgment," dismiss a request for declaratory relief if it determines that a declaratory judgment "will serve no useful purpose." *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 852 (9th Cir. 2011). Furthermore a declaratory judgment may only be issued in the case of an actual controversy. *See id.* "A prayer for injunctive and declaratory relief requires an assessment…of whether the plaintiff has sufficiently shown a real and immediate threat of future harm." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). "Past exposure to [allegedly] illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *See id.*

Here, Plaintiff has not alleged a likelihood of future injury. There are no facts alleged to support the possibility of a Plaintiff of any future purchase of another CBD Isolate Dropper such that he cannot allege imminent or future harm.  To the contrary, a fair reading of the Complaint supports the reasonable conclusion that Plaintiff will not purchase more of Defendant's products.  Therefore, the possibility of future purchase of CBD Isolate Dropper is "too speculative and contingent to create a case or controversy under Article III" because it is dependent on "discretionary decisions" and "multiple uncertain contingencies."  *See Medical Diagnostic*, 2018 WL 784456, at *7.   Furthermore, to grant the relief requested, the Court would have to act upon a hypothetical state of the law as to legality of sale of CBD products due to pending further guidance and regulation of CBD products by the FDA.  *New Image Global, Inc. v. National Tobacco Company LP*, No. 09-06761—DMG (DTBx), 2010 WL 11506711, * 5 (C.D. Cal. March 15, 2010); *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.")  This controversy is neither real nor immediate, and the Court should therefore dismiss Plaintiff's cause of action for declaratory relief.

## VI.   PLAINTIFF'S NON-CALIFORNIA CLAIMS MUST BE DISMISSED AND HIS MULTISTATE CLASS ALLEGATIONS STRICKEN

"Sometimes the issues are plain enough from the pleadings to determine [that] the interests of absent class members are [not] fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Plaintiff alleges a class action on behalf of all persons in the United States who purchased Defendant's CBD Products, or in the alternative, on behalf of all persons in the State of California who purchased Defendant's CBD. (Compl. ¶ 42-43.)  However, Plaintiff is not a member of a purported non-California class.  He therefore lacks standing to assert claims on behalf of such purported classes, and thus such purported classes lack a class representative. Furthermore, under Ninth

13

Circuit precedent, similar consumer-protection actions that seek to certify multistate classes fail the commonality and predominance requirements of Rule 23. For these reasons, the non-California multi-state class allegations must be stricken from the Complaint.

## A. Plaintiff Lacks Standing Under the Laws of Other States

Plaintiff is a citizen of California and he resides in Los Angeles County where he purchased the CBD Isolate Dropper. (SAC ¶ 13.) "[A] plaintiff who is not a resident of a state lacks standing to represent . . . [other] individuals asserting claims under the laws of that state." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 547 n.129, 548-49 (C.D. Cal. 2012). Plaintiff's claims under other states' laws, therefore, must be dismissed. *See Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) ("where . . . a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal").

## B. The Non-California Multistate Class Allegations Should Be Stricken

### 1. The Non-California Multistate Class Lacks a Class Representative

Plaintiff is a California resident and alleges harm based on California law. Plaintiff is not a member of a putative class from the other, non-California states. It is axiomatic that no class can be certified without a class representative who belongs to the class. *See Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014). A non-California multistate class, without a class representative, cannot be certified.

### 2. The Non-California Multistate Class Lacks Commonality and Predominance

Even if Plaintiff could somehow represent non-California multistate classes, those classes still could not be certified because variations among the respective states' laws would render a class-wide trial impossible. California's statutes do not

14

apply outside California's borders. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (UCL does not operate extraterritorially); *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 135859 (Fed. Cir. 2013) (Commerce Clause precludes extraterritorial application of California consumer-protection laws); the CLRA is actionable only by California residents. *Nordberg v. Trilegiant Corp*. (ND CA 2006) 445 F.Supp.2d 1082, 1096.

Even if California's statutes could apply extraterritorially, California choice-of-law principles dictate that the claims of out-of-state class members "should be governed by" the "laws of the jurisdiction in which the transaction took place," *Mazza*, 666 F.3d at 589-94. District courts in California have long relied on *Mazza's* choice-of-law analysis to deny requests to certify nationwide state-law based class actions. *See Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1104 (C.D. Cal. 2012); *Kowalsky v. Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS 34597 (N.D. Cal. Mar. 14, 2012); *Ralston v. Mortgage Inv. Group, Inc.,* 2012 U.S. Dist. LEXIS 45545 (N.D. Cal. Mar. 30, 2012). As Central District Judge Cormac Carney noted in a food-mislabeling case, a "nationwide class action" asserting statutory and common-law claims under the laws of every state "would be . . . very unfair and inefficient," and "trial would devolve quickly into an unmanageable morass of divergent legal issues." *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1103-04 (C.D. Cal. 2012).

A lawsuit based on CBD product labeling and marketing is particularly ill-suited for nationwide class treatment. Not only is the FDA position evolving, but each state has a unique and widely disparate stance on CBD products under state law due to their individual authorities to regulate food safety within their own boarders. Some states have policies that prohibit the use of CBD for human consumption while other states expressly permit CBD to be added to foods and beverages or marketed

as dietary supplements. Yet other states, like New York[1] and Louisiana[2] allow for the sale of dietary supplements or topical products that contain CBD, but not foods or beverages that contain the ingredient.

Several states expressly permit the sale of CBD products for human consumption, including Alabama[3], Colorado[4], Florida[5], Indiana[6], Oklahoma[7], Rhode Island[8], Texas[9] and Utah[10]. Even though CBD products are permitted by these states, regulations governing its manufacture and sale differ greatly. Oklahoma, for example, passed legislation expressly permitting the sale of CBD products within the state. *See* Okla. Ann. §63-1-1431(A). The three-page bill requires any manufactured product containing CBD to include a label which contains the country of origin of the CBD and whether the CBD is synthetic or natural. *Id*.

The rules governing CBD in Indiana and Utah are more stringent. Utah requires all CBD products sold within the state to be registered with Utah Department of Agriculture and Food. *See* Utah Admin. Code R68-26-5(3) (2019). Both Utah and Indiana implement strict labeling guidelines requiring product labels to include a scannable bar code or QR code linked to a document containing the batch identification number, the product name, the batch date, an expiration date,

---

[1] *See* New York Dep't of Agriculture and Markets, *Frequently Asked Questions* (July 16, 2019) (*available at* https://agriculture.ny.gov/system/files/documents/2019/10/CBD_FAQs.pdf) (last visited Jan. 17, 2020).
[2] LA. Stat. Ann. § 3:1482(C)(3)(2019)
[3] *See* State of Alabama, Office of the Attorney General, *Public Notice* (Updated August 14, 2019) (available at https://www.alabamaag.gov/Documents/News/PUBLIC%20NOTICE%20RE%20CBD%20August%202019.pdf) (last visited Jan. 17, 2020)
[4] *See* CO. Rev. Stat., §35-61-108(2)
[5] *See* §581.217, Fla. Stat. (2019)
[6] *See* Ind. Code Ann. §24-4-21-4 (2018)
[7] *See* OK SB238 (2019) (available at https://legiscan.com/OK/text/SB238/id/2010779)
[8] *See* 230-RICR-80-10-1 (2018)
[9] *See* Tex. Code Ann. Health & Safety §443.205(a)(2019)
[10] *See* Utah Admin. Code R68-26-5(3) (2019)

16

and a link to the certificate of analysis for the specific batch. *See* Utah Admin. Code R68-26-5(3) (2019) and Ind. Code Ann. §24-4-21-4 (2018).

Given that state regulation of CBD products are widely variable, lawsuits based on CBD labeling rules are not suited for nationwide class treatment. Furthermore, it will be impossible to determine what alleged statement and for what product each purported class member saw or relied upon and such complex variances necessitate striking class claims.

State warranty laws are also sufficiently dissimilar that they cannot be thrown together into one multistate class. *See Cole v. GMC*, 484 F.3d 717, 725-26 (5th Cir. 2007) (noting "numerous variations in the substantive laws of express and implied warranty among the fifty-one jurisdictions" concerning, *inter alia*, "reliance, notice of breach, vertical privity, and presumptions of merchantability"); *Karim v. Hewlett-Packard Co*., 2014 U.S. Dist. LEXIS 65742, at *23-25 (N.D. Cal. 2014) (same); *In re Hitachi TV Optical Block Cases*, 2011 U.S. Dist. LEXIS 135, at *17 (S.D. Cal. 2011) (same); *Sanders v. Apple, Inc*., 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (same).

Here, for example, the Defendant's website contains terms and conditions that include warranty disclaimer language. *See* Ex. 2 to RJN. A nationwide class would require the court to apply the law of each state to determine the substantive legal impact of that language on a case-by-case basis.

Courts routinely reject a "worry later" approach when it comes to class claims. *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 675 (S.D. Cal. 1999). Plaintiff's non-California multistate class allegations should be stricken because those classes lack a representative, the California statutes which this lawsuit is brought under not apply outside California's borders, and because there is great variation among consumer protection and warranties laws from state to state, individual questions of law predominate, rather than common questions of law.  *In re: Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 853, 856 (9th Cir. 1982).

17

VII. **IF THE COURT DOES NOT DISMISS OR STRIKE THE COMPLAINT, THE COURT SHOULD STAY THIS CASE PENDING FURTHER GUIDANCE BY THE FDA AS TO CBD PRODUCTS.**

District courts have inherent discretionary power to stay cases, especially if it believes that staying a case will result in an "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005); *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 878 n. 6 (1998); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). A "stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

The primary jurisdiction doctrine applies where a case implicates a federal agency's expertise with a regulated product. Here, the FDA has such expertise and it is currently conducting a review of CBD products. *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002); *Kane v. Chobani, LLC*, No. 14-15670, 2016 WL 1161782 (9th Cir. Mar. 24, 2016); *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)(efficiency is a deciding factor in whether to apply primary jurisdiction). The doctrine enables a court to take advantage of an agency's expertise, protects the integrity of the regulatory scheme, and promotes uniformity. *See id.* The primary jurisdiction doctrine is a discretionary doctrine that allows "'courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency.'" *Garrison v. Whole Foods Market Group, Inc.*, No. 13-05222-CV, 2014 WL 2451290, *2 (N.D. Cal. June 2, 2014). This Court should stay the case based on the primary jurisdiction doctrine.

A. **The Forthcoming CBD Guidance by the FDA.**

In *Kane*, the Ninth Circuit considered the FDA's November 12, 2015 announcement of its initiation of a formal regulatory proceeding to determine the

18

permissible uses of the term "natural" in food labeling and mandated that the FDA's commencement of rulemaking brings into play the primary jurisdiction doctrine. *Kane v. Chobani, LLC*, No. 14-15670, 2016 WL 1161782 (9th Cir. Mar. 24, 2016). Given the FDA proceedings, the Ninth Circuit reasoned that "delineation of the scope and permissible usage of the term[ ] 'natural'... implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.* at *1-2. (citing *Astiana*, 783 F.3d at 760.) (internal quotation marks omitted). On that ground, the Ninth Circuit directed the district court to stay a lawsuit where plaintiffs asserted that defendant Chobani, Inc. "deceptively and unlawfully" labeled its yogurt "natural" in violation of FDA regulations, pending resolution of the FDA's rulemaking proceedings. *Id.* at *2.  In *Viggano v. Johnson & Johnson*, this Court, based on the primary jurisdiction doctrine, in line with the *Kane* decision, and pending FDA guidance as to what constitutes proper labelling "natural" foods, stayed a lawsuit similar to the case at bar.  *See Viggano v. Johnson & Johnson*, Case No. CV 14-7250 (C.D. Cal. June 21, 2016).

Here similar to *Kane* and *Viggano*, the Court can and should stay the case. The FDA appears poised to act on regulation that will provide further guidance on the CBD products like the one at issue in this case.  Last year, the FDA conducted a public hearing and instituted an agency task force on evolving CBD regulation. *See* U.S. Food & Drug Admin., *Scientific Data and Information About Products Containing Cannabis or Cannabis-Derived Compounds; Public Hearing; Request for Comments*, 84 FR 12969 (Apr. 3, 2019).

In its news release that accompanied the subject warning letter issued on November 25, 2019, the FDA stated: "Today's actions come as the FDA continues to explore potential pathways for various types of CBD products to be lawfully marketed. This includes ongoing work to obtain and evaluate information to address outstanding questions related to the safety of CBD products, while maintaining the

19

agency's rigorous public health standards. The FDA plans to provide an update on its progress regarding the agency's approach to these products in the coming weeks." *See*  https://www.fda.gov/news-events/press-announcements/fda-warns-15-companies-illegally-selling-various-products-containing-cannabidiol-agency-details

Senate Majority Leader Mitch McConnell has introduced an amendment to an appropriations bill that would require the FDA to fast-track guidance, including enforcement discretion for some CBD products, on "the process in which CBD meeting the definition of hemp will be evaluated for use in products."  *See* 2019 Legis. Bill Hist., U.S. S.B. 2522, 2019 Legis. Bill Hist. (2019) ("Within 90 days of enactment of this act, the FDA shall provide the Committee with a report regarding the agency's progress toward obtaining and analyzing data to help determine a policy of enforcement discretion and the process in which CBD meeting the definition of hemp will be evaluated for use in products.  Within 120 days of enactment of this act, the FDA shall issue a policy of enforcement discretion with regard to certain products containing CBD meeting the definition of hemp as defined by section 297A of the Agricultural Marketing Act of 1964"); AGRICULTURE, RURAL DEVELOPMENT, FOOD AND DRUG ADMINISTRATION, AND RELATED AGENCIES APPROPRIATIONS BILL, 2020, 116 S. Rpt. 110, at 39-40 (Sept. 2019).

Most recently, on January 10, 2020, a bill was introduced in the U.S. House of Representatives by Rep. Collin Peterson, Chair of the House Agriculture Committee, that seeks to exclude "hemp derived cannabidiol or a hemp derived cannabidiol containing substance" from the definition of "dietary supplement" within Section 201(ff)(3)(B) of the FDCA. *See* https://www.congress.gov/bill/116th-congress/house-bill/5587

Thus, CBD regulation and guidance is actively evolving. It can reasonably be concluded that between the time of filing the subject Complaint and the ultimate

20

conclusion of this litigation, the position of the FDA on the sale, distribution, labeling and marketing of various types of CBD products will have changed. Given the highly uncertain and fluid state of this area of law, it is all but impossible for this court to accurately assess and direct the parties on the relevant legal obligations implicated by the allegations within the Complaint. Without some measure of legal certainty, there is a high risk that Defendant will be subject to conflicting legal obligations or directions imposed by this Court, the FDA and the various states.

**B.    The Primary Jurisdiction Doctrine Favors Staying this Action.**

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). While there is no "fixed formula" for applying the doctrine, the Ninth Circuit traditionally considers four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co., v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

Here, the central issue in this case is implicated by FDA's forthcoming interpretive guidance as to CBD products.  The 2018 Farm Bill explicitly grants the FDA exclusive jurisdiction to regulate CBD in consumer products. Pub. L. No. 115-334, 132 Stat. 4908–11. Questions that the FDA is currently working to resolve include how and when CBD is considered a drug versus a food additive, dietary supplement or cosmetic product, as well as what information is required to be on CBD product labels and whether the information varies according to use of the product. Other questions being considered by the FDA include whether limits should be placed on the amount of CBD per use and whether or to what extent health and disease claims, or structure and function claims, may be made in connection with

21

the sale of various CBD products in different market channels. These questions are all explicitly under the FDA's jurisdiction pursuant to federal law. The resolution of these questions will be dispositive to all of the claims raised in this litigation.

The FDA's action is therefore pursuant to a statute that subjects an industry to a comprehensive regulatory scheme that requires both expertise and uniformity in administration.  Where, as here, the resolution of Plaintiff's cause of action would require interpreting and considering technical terms and industry policies, it is within the FDA's field of experience. As the FDA's Acting Commissioner recently commented:  "The regulation of a product like CBD is complex and touches almost every aspect of FDA's authority." *See* Food & Drug Admin., *FDA Acting Commissioner's Remarks to the 2019 FDLI Annual Conference*, at 4 (May 2, 2019) (*available at* https://www.fda.gov/news-events/speeches-fda-officials/fda-acting-commissioners-remarks-2019-fdli-annual-conference-05022019 (last visited Oct. 18, 2019).

Even if the guidance and rulemaking by the FDA is not dispositive, a stay is appropriate because the Court will inevitably benefit from the administrative guidance in this case. *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.,* 307 F.3d 775, 780 (9th Cir. 2002).The need for consistent guidance is underscored by the increasing volume of this type of litigation and the concomitant potential for inconsistent judicial rulings. *Greenfield*, 18 F. Supp.3d at 1376; *see also Skybolt Aeromotive Corp. v. Milspec Prods.*, No. 5:16-cv-616-oc-PRL, 2017 U.S. Dist. LEXIS 88597, at *29 (M.D. Fla. Jun. 9, 2017) (granting stay to promote "uniformity" and "consistency" based on primary jurisdiction).

On January 3, 2020, a Florida District Court stayed a case similar to the present one at bar involving CBD products based on the primary jurisdiction doctrine pending guidance by the FDA.  *See* RJN, Ex. 3, Order on Motion to Dismiss.  The Florida District Court pointed out that the FDA is exercising regulatory authority over ingestible and other CBD products, there is uncertainty with respect to whether

22

1    the FDA will conclude that some or all CBD products are food additives or

2    supplement, and the labelling standards and requirements for CBD products will be

3    different or the same as for other products. *See id.* at *14.  The court noted the

4    importance of uniformity in administration of the labelling of ingestible CBD

5    products.  The court found such factors militated in favor of application of the

6    doctrine of primary jurisdiction and therefore stayed the case.  *See id.* at *15.  The

7    court further determined that "[g]iven that this case is in the nature of public interest

8    litigation, the delay occasioned by a stay under the current circumstances, would not

9    prejudice Plaintiffs to any significant degree." *See id.*  Finally, the court emphasized

10    that the current regulatory framework was inadequate to resolve the legal issues,

11    holding:

12       "As for the adequacy of the current regulatory framework to resolve the issue

13       posed by this case, the Court vehemently disagrees. The FDA regulations

14       currently provide little guidance with respect to whether CBD ingestibles, in

15       all their variations are food supplements, nutrients or additives and what

16       labeling standards are applicable to each iteration."

17 *See id.*

18      It is also important to note that the FDA is currently actively involved with

19    Defendant in resolving the issues raised in the subject November 22, 2019 warning

20    letter. This is a direct exercise of primary regulatory jurisdiction by the FDA.

21      Moreover, Plaintiff will not be unduly prejudiced by waiting until the FDA

22    issues their regulations and guidance.  Plaintiff dallied nearly a year to file this action

23    after his purported purchase.   The case is in the earliest stages of litigation, and has

24    not yet been set for trial.  There is no reason for the parties to waste resources and

25    time in engaging in discovery because the need for discovery may be entirely

26    unnecessary or greatly reduced when the FDA issues their interpretations on issues

27    relevant to this case.  *Herazo*, 2015 U.S. Dist. LEXIS 96811, at *13-*14.  A stay

28    should therefore simplify the issues and streamline a trial, should one take place.

Further guidance would impact the adjudication of any summary judgment motion and, prior to that, simplify issues for the parties and Court in both fact discovery and expert discovery.  On the other hand, permitting discovery while the FDA regulatory proceeding is underway may impose unnecessary burdens on Defendant by leading to discovery that could be rendered unnecessary by later FDA conclusions. *See Chronicle Publ'g Co. v. Nat'l Broad. Co.*, 294 F.2d 744, 749 (9th Cir. 1961) ("[t]o be effective," a stay intended to "avoid[ ] ... unnecessary duplication of effort" must include "pre-trial discovery"); *see also Rhoades*, 504 F.3d at 1165 (district court should not exercise jurisdiction if agency referral is a more efficient alternative).  Finally, even after a stay the Court may order periodic status reports, and monitor whether a temporary stay is causing undue delay.

## VIII.  <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss the Complaint for lack of Article III standing, for failure to state a claim and lack of subject matter jurisdiction.  Furthermore, Plaintiff's claims based on out-of-state statutes should be dismissed or stricken, and his multistate class allegations should be stricken.  Alternatively, this Court can stay this case pending the FDA's interpretive CBD guidance.  Plaintiff, who waited a year to file his claim after a claimed purchase, will not be prejudiced.  A stay will also promote uniformity and consistency in the application of FDA standards.

Respectfully submitted,

Dated:  January 17, 2020

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


By:  /s/Ian A. Stewart

Ian A. Stewart
Daniel H. Lee
Attorneys for Defendant INFINITE PRODUCT COMPANY LLC, d/b/a Infinite CBD

24

3566398v.2

1

2      BROWNSON NORBY PLLC

3

4      By:  /s/Thomas J. Norby

5           Thomas J. Norby
            Attorneys for Defendant INFINITE
6           PRODUCT COMPANY LLC, d/b/a
            Infinite CBD
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE**

3566398v.2