Jonathan Shub (CA Bar #237708)
Kevin Laukaitis*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: 215-238-1700
Email: jshub@kohnswift.com
      klaukaitis@kohnswift.com

*Attorneys for Plaintiff and the Class*
[Additional Counsel Listed on Signature Page]

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM DASILVA, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>INFINITE PRODUCT COMPANY LLC, d/b/a Infinite CBD, a Colorado limited liability company<br><br>              Defendant. | Civil Action No.: 2:19-cv-10148-DMG-E<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Plaintiff Adam DaSilva ("Plaintiff"), through his undersigned attorneys,

Barbat, Mansour & Suciu PLLC, Kohn, Swift & Graf, P.C. and Greg Coleman

Law, P.C., brings this First Amended Class Action Complaint[1] against Defendant

---

[1] Plaintiff files this First Amended Complaint pursuant to the Court's February 4, 2020 Order [D.E. 42], which provided Plaintiff leave to amend his Complaint within 21 days of the Court's

**FIRST AMENDED CLASS ACTION COMPLAINT**

Infinite Product Company LLC, d/b/a Infinite CBD ("Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1.      This is a civil class action brought individually by Plaintiff on behalf of consumers who purchased Defendant's "Absolute Zero 99% + CBD Isolate," "Freezing Point CBD Topical Cream," "Afterglow Healing Oil 100 mg CBD Total," "Nano Enhancer Pure Nano CBD," "Nano Freezing Point CBD Topical Cream," "Asteroid Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," "Isolate Dropper", and "Nano Non Dairy Creamer," (the "Products" or "CBD Products").  All of the Products are promoted as products containing cannabidiol (CBD), for personal use and not for resale.

2.      Defendant's Products, however, are illegal to sell.

3.      Defendant formulates, manufactures, advertises, and sells the CBD Products throughout the United States, including in the State of California.

---

Order. Plaintiff fully intended to amend his complaint by February 7, 2020—within the time proscribed by Fed.R.Civ.P. 15(a)(1)(B) ("21 days after service of a motion under Rule 12(b)"). That is the only reason Plaintiff did not file his Opposition to Defendant's motion to dismiss by January 31, 2020. Plaintiff had no intention of not following C.D. Cal. L.R. 7-12.

2

FIRST AMENDED CLASS ACTION COMPLAINT

4.      The CBD (cannabidiol) Product market is a multibillion-dollar business enterprise that is lucrative for its market participants and is expected to further expand into a $16 billion-dollar industry by 2025.[2]

5.      With knowledge of growing consumer demand for CBD Products, Defendant has intentionally marketed and sold illegal CBD products.

6.      Defendant's multiple and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that harms the public.

7.      Accordingly, Plaintiff and each of the Class members have suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein, and seek compensatory damages and injunctive relief.

8.      Plaintiff brings this suit to halt the unlawful sales and marketing of the CBD Products by Defendant and for damages he sustained as a result.  Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

9.      Plaintiff and each of the Class members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set

---

[2] https://www.forbes.com/sites/irisdorbian/2019/03/12/cbd-market-could-pull-in-16-bln-by-2025-says-study/#69e764bb3efd.

**FIRST AMENDED CLASS ACTION COMPLAINT**

forth herein, and seek compensatory damages, statutory damages, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d).   The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship.

11.    This Court has personal jurisdiction over Defendant in this matter. The acts and omissions giving rise to this action occurred in the state of California. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of California, during the relevant time period, at which time Defendant was engaged in business activities in the state of California.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's

**FIRST AMENDED CLASS ACTION COMPLAINT**

claims occurred in this District and because Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this district.

## PARTIES

13.     Plaintiff Adam DaSilva is a citizen of California who resides in Los Angeles, California.   On November 12, 2018, Plaintiff purchased CBD Isolate Dropper from Defendant through Defendant's website, https://infinitecbd.com/ for $43.15.  If Plaintiff knew the Products were not legally sold in the United States, Plaintiff would have not purchased them.

14.     Defendant Infinite Product Company LLC, d/b/a Infinite CBD is a Colorado limited liability company with its principal place of business at 12364 W. Almeda Pkwy, Ste. 115, Lakewood, CO 80228.

## FACTUAL ALLEGATIONS

15.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner.  Defendant sells the Products in all 50 states on its website and through various distributors.

## *DEFENDANT'S ILLEGAL PRODUCTS*

16.     On November 22, 2019, the United States Food & Drug Administration sent Defendant a Warning Letter discussing numerous violations of the Products, including but not limited to; Unapproved New Drugs, Misbranded Drugs,

5

Adulterated Human Foods, Unapproved New Animal Drugs, and Adulterated Animal Foods. All of these violations of the Food, Drug and Cosmetic Act make the Products illegal to sell. All of the allegations listed below regarding the regulatory violations are explained more explicitly in the FDA Warning Letter attached hereto as **Exhibit A**.

***Unapproved New Drugs***

17.     Defendant's "Absolute Zero 99%+ CBD Isolate," "Freezing Point CBD Topical Cream," "Afterglow Healing Oil 100mg CBD Total," "Nano Enhancer Pure Nano CBD," "Nano Freezing Point CBD Topical Cream" "Asteroid Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," "Isolate Dropper", and "Nano Non Dairy Creamer" products are drugs under section 201(g)(1) of the FD&C Act, 21 U.S.C. 321(g)(1), because they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease and/or intended to affect the structure or any function of the body.

18.     The FDA cites numerous representations on Defendant's websites to support the agency's position:

On your product webpage for "Freezing Point CBD Topical Cream":

- "Freezing Point Cream[.] Freeze away all aches and pains... [P]ainkiller and muscle relaxant."

On your product webpage for "Afterglow Healing Oil 100mg CBD Total":

**FIRST AMENDED CLASS ACTION COMPLAINT**

- "Great for new tattoos, eczema, psoriasis, acne, scarring, or open wounds."

On your product webpage for "Nano Freezing Point CBD Topical Cream":

- "Instantly eliminate aches and pains with NANO CBD Pain Cream ... Reduce pain and inflammation associated with conditions like arthritis, osteoarthritis, and muscle injury."

On your webpage titled "A Guide to Hepatitis and CBD":

- "Can CBD Alleviate Symptoms of Hepatitis...CBD can positively impact those with hepatitis C...It is clear that CBD's potential for helping those with hepatitis is there…"

On your webpage titled "Autism and the Endocannabinoid System":

- "CBD Can Alleviate Some Symptoms of Autism."

On your webpage titled "CBD as a Potential Treatment Method for Tourette Syndrome":

- "Cannabinoids Reduce Tourette Syndrome Symptoms…CBD can treat severe motor and vocal tics related to TS. Therefore, more and more TS patients are trying cannabinoids as an alternative treatment method."

On your product webpage for "Launch Pad"

- CBD Isolate –… With the anti-inflammatory properties of CBD Isolate, this can help ease the irritation of chapped/dry skin as well as wounds.

On your webpage titled "World Cancer Day: How CBD Helps Cancer":

- "How CBD Helps Cancer…Using biological pathways, cannabinoids (like CBD) have been found to target and inhibit the growth of cancer cells."
- "A more specific examination of this shows that CBD has anti-angiogenic properties when applied to a variety of tumors."
- "A study published in early 2017 demonstrated that CBD improved the chances of survival in patients with aggressive brain cancers."

**FIRST AMENDED CLASS ACTION COMPLAINT**

- "A study on lung cancers published in 2012 suggests that CBD 'decreases cancer cell invasiveness.' By acting to increase tissue inhibitor in particular molecules in the lungs, CBD acts to reduce the spread of cancerous cells."

On your webpage titled "Uses of CBD?":

- "Mad cow disease…Substance abuse disorders…Cancer…Diabetes…"
- "Neuroprotective: with regards to conditions such as Parkinson's and Alzheimer's, both studies have shown CBD to work against the toxicity in the neurons of the brain, working as an antioxidant and providing protection against further deterioration."
- "Anti-cancer: CBD has shown to be effective in blocking and preventing further growth of cancer cells within the body."
- "Mad Cow Disease – the prion is the agent responsible for causing neurodegenerative disease. With CBD, production of this agent is blocked."

On your webpage "Should I Use CBD Versus Opioids":

- "CBD – Natural and Safe Alternative to Opioids…Also due to opioids' addictiveness and painful withdrawal symptoms, people have moved towards using CBD as their primary treatment method."

Additional claims observed on your social media sites include, but are not limited to, the following:

On your Facebook page at https://www.facebook.com/infinitecbd:

- (posted May 25, 2018) "'[C]annabinoids have been tested in several experimental models of autoimmune disorders such as multiple sclerosis, rheumatoid arthritis, colitis and hepatitis and have been shown to protect the host from the pathogenesis…'"

On your Instagram page at https://www.instagram.com/infinite_c_b_d:

- (posted June 21, 2019) "Oxidative stress can trigger serious health issues, like cancer, heart disease, and Alzheimer's. CBD is a patented neuroprotective antioxidant."

**FIRST AMENDED CLASS ACTION COMPLAINT**

- (posted August 16, 2019) "Infinite CBD was born out of the success of helping someone suffering from Lymes [sic] Disease. After taking CBD, the individual stated that he has become 'the most pain free' he had ever been"

19.     Defendant's "Absolute Zero 99%+ CBD Isolate," "Freezing Point CBD Topical Cream," "Afterglow Healing Oil 100mg CBD Total," "Nano Enhancer Pure Nano CBD," "Nano Freezing Point CBD Topical Cream," "Asteroid Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," "Isolate Dropper", and "Nano Non Dairy Creamer" Products are not generally recognized as safe and effective for their above referenced uses and, therefore, these products are "new drugs" under section 201(p) of the FD&C Act, 21 U.S.C. 321(p). New drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from the FDA, as described in sections 301(d) and 505(a) of the FD&C Act, 21 U.S.C. 331(d) and 355(a).  *See* **Exhibit A.**

***Misbranded Drugs***

20.     Defendant's "Absolute Zero 99%+ CBD Isolate," "Freezing Point CBD Topical Cream," "Afterglow Healing Oil 100mg CBD Total," "Nano Enhancer Pure Nano CBD," "Nano Freezing Point CBD Topical Cream," "Asteroid Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," "Isolate Dropper", and "Nano Non Dairy Creamer," products are also misbranded within the meaning of section 502(f)(1) of the FD&C Act, 21 U.S.C. 352(f)(1), in that

**FIRST AMENDED CLASS ACTION COMPLAINT**

their labeling fails to bear adequate directions for use. "Adequate directions for use" means directions under which a layperson can use a drug safely and for the purposes for which it is intended. *See* 21 CFR 201.5. The aforementioned products are offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; therefore, adequate directions for use cannot be written so that a layperson can use these drugs safely for their intended purposes. FDA approved prescription drugs that bear their FDA-approved labeling are exempt from the requirements that they bear adequate directions for use by a layperson. However, Defendant's Products are not exempt from the requirement that their labeling bear adequate directions for use, under 21 CFR 201.100(c)(2) and 201.115, because no FDA approved applications are in effect for them. The introduction or delivery for introduction into interstate commerce of these misbranded drugs violates section 301(a) of the FD&C Act, 21 U.S.C. 331(a).  *See* **Exhibit A.**

### *310(ll) and Adulterated Human Foods*

21.   Defendant's "Asteroid Gummies", "Sour Asteroid Gummies," "Sweetened Dropper," "Isolate Dropper" and "Nano Non Dairy Creamer" products appear to be promoted as conventional human food. For example, the labeling describes the products, variously, as "delicious," "tasty treat[]", "sweetened

**FIRST AMENDED CLASS ACTION COMPLAINT**

flavor," and something that can be "[e]asily tossed into your lunch" or added to "your favorite recipes for delicious CBD infused meals" or added to beverages.

22.     It is a prohibited act under section 301(ll) of the FD&C Act, 21 U.S.C. 331(ll), to introduce or deliver for introduction into interstate commerce any food to which has been added a drug approved under section 505 of the FD&C Act or for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public.  The FDA has concluded that the prohibition in section 301(ll) applies to CBD.  There is an exception if the substance was marketed in food before the drug was approved or before the substantial clinical investigations involving the drug had been instituted. However, based on available evidence, the FDA has concluded that this is not the case for CBD.  The FDA is not aware of any evidence that would call into question its current conclusion that section 301(ll) of the FD&C Act, 21 U.S.C. 331(ll), prohibits the introduction into interstate commerce of any food to which CBD has been added.

23.     As defined in section 201(s) of the FD&C Act (21 U.S.C. 321(s)), the term "food additive" refers to any substance the intended use of which results in its becoming a component of any food, unless the substance is generally recognized as safe (GRAS) among qualified experts under the conditions of its intended use, or unless the substance meets a listed exception.

**FIRST AMENDED CLASS ACTION COMPLAINT**

24.     Food additives require premarket approval based on data demonstrating safety. Any food additive that has not been approved for its intended use in food is deemed to be unsafe under section 409(a) of the FD&C Act (21 U.S.C. 348(a)), and causes the food to be adulterated under section 402(a)(2)(C)(i) of the FD&C Act, 21 U.S.C. 342(a)(2)(C)(i). Introduction of an adulterated food into interstate commerce is prohibited under section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

25.     There is no food additive regulation which authorizes the use of CBD. The FDA is not aware of any information to indicate that CBD is the subject of a prior sanction.  *See* 21 CFR Part 181.  Furthermore, the FDA is not aware of any basis to conclude that CBD is GRAS for use in conventional foods.  The FDA's regulations in 21 CFR 170.30(a)-(c) describe the criteria for eligibility for classification of a food ingredient as GRAS. The use of a food substance may be GRAS based on either scientific procedures or, for a substance used in food before 1958, through experience based on common use in food.  *See* 21 CFR 170.30).

26.     There is no basis for general recognition of safety for CBD based either on scientific procedures or common use in food prior to January 1, 1958. Based on our review of published, scientific literature, existing data and information do not provide an adequate basis to conclude that the use of CBD in food meets the criteria for GRAS status. Many unanswered questions and data gaps

**FIRST AMENDED CLASS ACTION COMPLAINT**

about CBD toxicity exist, and some of the available data raise serious concerns about potential harm from CBD. Our review of publicly available data associated with the one FDA-approved CBD drug, as well as our review of published scientific literature, identified potential for liver injury from CBD and potentially harmful interactions with certain drugs. In addition, studies in animals have shown that CBD can interfere with the development and function of testes and sperm, decrease testosterone levels, and impair sexual behavior in males. Therefore, based on the FDA's review, the use of CBD in conventional food products does not satisfy the criteria for GRAS status under 21 CFR 170.30.

27.    The FDA is not aware of any other exception to the food additive definition that would apply to CBD for use as an ingredient in a conventional food. Therefore, CBD added to a conventional food is a food additive under section 201(s) of the FD&C Act and is subject to the provisions of section 409 of the FD&C Act. Under section 409, a food additive is deemed unsafe unless it is approved by FDA for its intended use prior to marketing. CBD is not approved for use in any conventional food. Food containing an unsafe food additive within the meaning of section 409 is adulterated within the meaning of section 402(a)(2)(C)(i) of the FD&C Act. Introduction of an adulterated food into interstate commerce is prohibited under section 301(a) of the FD&C Act, 21 U.S.C. 331(a). *See* **Exhibit A.**

---

**FIRST AMENDED CLASS ACTION COMPLAINT**

***Unapproved New Animal Drugs***

28.     The FDA determined that Defendant is marketing the unapproved new animal drugs "Pet Droppers" and "Launch Pad." Based on their review of Defendant's website, "Pet Droppers" and "Launch Pad" products are drugs under section 201(g)(1) of the FD&C Act, 21 U.S.C. 321(g)(1), because they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in animals and/or intended to affect the structure or any function of the body of animals. Further, as discussed below, these products are unapproved new animal drugs and marketing them violates the FD&C Act. The Warning Letter cites numerous claims made on Defendant's website supporting this position. *See* **Exhibit A**.

***301(ll) and Adulterated Animal Foods***

29.     Defendant's use of CBD in animal foods is a prohibited act under section 301(ll) of the FD&C Act, 21 U.S.C. 331(ll), to introduce or deliver for introduction into interstate commerce any animal food to which has been added a drug approved under section 505 of the FD&C Act or for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public. Based on available evidence, the FDA has

**FIRST AMENDED CLASS ACTION COMPLAINT**

concluded that the prohibition in section 301(ll) applies to CBD, as described above.

30.     As defined in section 201(s) of the FD&C Act (21 U.S.C. 321(s)), the term "food additive" refers to any substance the intended use of which results in its becoming a component of any animal food, unless the substance is generally recognized as safe (GRAS) among qualified experts under the conditions of its intended use, or unless the substance meets a listed exception.

31.     There is no animal food additive regulation that authorizes the use of CBD. The FDA is not aware of any information to indicate that CBD is the subject of a prior sanction (i.e., a sanction or approval granted prior to the enactment of the Food Additives Amendment of 1958 under the FD&C Act, the Poultry Products Inspection Act, or the Meat Inspection Act). There is no basis to conclude that CBD is GRAS for use in animal foods. The FDA's regulations in 21 CFR 570.30(a)-(c) describe the criteria for eligibility for classification of an animal food ingredient as GRAS. The use of an animal food substance may be GRAS based on either scientific procedures or, for a substance used in animal food before 1958, through experience based on common use in animal food.  *See* 21 CFR 570.30). There is no basis for general recognition of safety for CBD based either on scientific procedures or common use in animal food prior to January 1, 1958. Based on the FDA's review of the publicly available literature, the data and

**FIRST AMENDED CLASS ACTION COMPLAINT**

information necessary to support the safe use of CBD in animal foods are lacking. In fact, literature reports have raised safety concerns for animals consuming CBD, including, but not limited to, male reproductive toxicity and liver toxicity. Therefore, based on the FDA's review, the use of CBD in animal products does not satisfy the criteria for GRAS status under 21 CFR 570.30.

32.     Under section 409, an animal food additive is deemed unsafe unless it is approved by the FDA for its intended use prior to marketing. CBD is not approved for use in any animal food. Animal food containing an unsafe food additive within the meaning of section 409 is adulterated within the meaning of section 402(a)(2)(C)(i) of the FD&C Act. Introduction of an adulterated animal food into interstate commerce is prohibited under section 301(a) of the FD&C Act, 21 U.S.C. 331(a).  *See* **Exhibit A.**

**Mislabeled Dietary Supplement and Illegal Sublingual Delivery System**

33.     Above and beyond the Warning Letter sent by the FDA, Defendant's CBD Isolate Dropper product is also misbranded and illegal for sale.

34.     Defendant labels its CBD Isolate Dropper product as a dietary supplement and gives an illegal delivery instruction:

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DELIVERY METHODS**


INHALATION


INGESTION


ORAL


TOPICAL


RECTAL/VAGINAL

**HOW TO USE**

Oral: Drop desired amount of CBD under your tongue to let absorb for up to a minute. Ingestion: Add a few drops to your favorite recipes for delicious CBD infused meals. Topical: Apply the Dropper to your skin and gently massage in.

**KEY INGREDIENTS**

Coconut Oil: Due to the easy digestion of coconut oil, utilizing this carrier provides the highest bioavailability for consumers. CBD Isolate: 99%+ Pure CBD Isolate derived from Industrial Hemp.

35.     The FD&C Act defines the term "dietary supplement" in section 201(ff)(2)(A)(i) of the FD&C Act, 21 U.S.C. 321(ff)(2)(A)(i), as a product that is "intended for ingestion." Because sublingual products are intended to enter the body directly through the skin or mucosal tissues, they are not intended for ingestion. Therefore, the product bears directions for use as a sublingual product, such product does not meet the definition of a dietary supplement under the FD&C Act.

36.     The labels of the CBD Products are therefore misleading because the CBD Products are not dietary supplements.

37.     Defendant's conduct is also deceptive, unfair, and unlawful in that it violates the prohibition against the sale of adulterated and misbranded products

**FIRST AMENDED CLASS ACTION COMPLAINT**

under California's Sherman Laws, which adopt the federal labeling regulations as the food and dietary supplement labeling requirements of the state.[3] Cal. Health & Safety Code § 110095 ("All special dietary use regulations and any amendments to regulations adopted pursuant to the federal act, in effect on November 23, 1970, or adopted on or after that date, are the special dietary use regulations of this state."); *Id*. § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").

38.    The introduction of adulterated and misbranded food into interstate commerce is prohibited under the FDCA and the parallel state statute cited in this First Amended Class Action Complaint.

39.    Plaintiff and Class Members would not have purchased the Products or would have paid less for the Products if they were aware of the misleading labeling of the Products by Defendant.

40.    Defendant intended for Plaintiff and the Class members to be deceived or misled.

---

[3] California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Saf. Code § 109875 *et seq.*, incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act.  An act or omission that would violate an FDCA regulation necessarily therefore violates California's Sherman Law.  *Id.* at § 110100.

**FIRST AMENDED CLASS ACTION COMPLAINT**

41.     Defendant's deceptive and misleading practices proximately caused harm to the Plaintiff and the Class.

42.     Plaintiff and Class members would not have purchased the Products, or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

**National Class: All persons in the United States who purchased the Products.**

44.     In the alternative, Plaintiff brings this action on behalf of the following State Subclass:

**California Subclass: All persons in the State of California who purchased the Products.**

45.     Excluded from the Classes are: (1) Defendant, and any entity in which Defendant has a controlling interest or which have a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; and (3) the judge(s) to whom this case is assigned and any member of the judge's immediate family.

**FIRST AMENDED CLASS ACTION COMPLAINT**

46.     Plaintiff reserves the right to redefine the Class(es), and/or requests for relief.

47.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

48.     The members of the proposed Class(es) are so numerous that joinder of all members is impracticable.

49.     The exact number of Class members is unknown.  Due to the nature of the trade and commerce involved, as well as the number of online and direct complaints, Plaintiff believes the Class consists of thousands of consumers.

50.     Common questions of law and fact affect the right of each Class member, and a common relief by way of damages is sought for Plaintiff and Class members.

51.     Common questions of law and fact that affect Class members include, but are not limited to:

a.  Whether the Products, when used by consumers in a normal and customary manner and/or in accordance with Defendant's suggested use, works as advertised, marketed, and conveyed to consumers;

b.  Whether, in the course of business, Defendant represented that the Products have characteristics, uses, benefits, or qualities that they do

**FIRST AMENDED CLASS ACTION COMPLAINT**

not have when used by consumers in a normal and customary manner and/or in accordance with Defendant's suggested use;

c.  Whether the claims Defendant made and is making regarding the Products are unfair or deceptive; specifically, whether the Products were illegally labeled as dietary supplements with illegal delivery instructions;

d.  Whether Defendant knew at the time the consumer transactions took place that consumers would not receive the promised benefits of the Products that Defendant was claiming they would receive;

e.  Whether Defendant knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

f.  Whether Defendant knew or should have known that the representations and advertisements regarding the Products were unsubstantiated, false, and misleading;

g.  Whether Defendant has breached express and implied warranties in the sale and marketing of the Products;

h.  Whether Defendant's conduct violates public policy;

i.  Whether Defendant's acts and omissions violated California law;

j.  Whether Defendant has been unjustly enriched by the sale of the Products to the Plaintiff and the Class Members;

k.  Whether Plaintiff and the Class Members did not receive the benefit of their bargain when purchasing the Products;

l.  Whether the Plaintiff and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

m.  Whether Plaintiff and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

**FIRST AMENDED CLASS ACTION COMPLAINT**

52.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, are pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

53.     Additionally, the factual basis of Defendant's conduct is common to all Class members and represents a common thread of misconduct resulting in injury and damages to all members of the Class.

54.     The named Plaintiff will fairly and adequately assert and protect the interests of the Class.  Specifically, he has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and they have no conflict of interests that will interfere with the maintenance of this class action.

   a.   The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

   b.   The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

   c.   There are no unusual legal or factual issues which would create manageability problems, and depending on discovery, manageability will not be an issue as much information is solely in Defendant's possession;

**FIRST AMENDED CLASS ACTION COMPLAINT**

d.  Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

e.  Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

f.  The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which Class members can, as a practical matter, recover. However, the claims of individual Class members are collectively large enough to justify the expense and effort in maintaining a class action.

## CAUSES OF ACTION

### COUNT I
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq.  ("UCL")**
**(On Behalf of the California Subclass)**

55.    Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 54, as though set forth fully herein.

56.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

57.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

58.    Unlawful:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

**FIRST AMENDED CLASS ACTION COMPLAINT**

a.      The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

b.      The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

c.      The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

d.      The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

59.      <u>Unfair</u>: Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

60.      Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

61.      Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

**FIRST AMENDED CLASS ACTION COMPLAINT**

62.   <u>Fraudulent</u>:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

63.   As set forth herein, Defendant's claims relating the ingredients stated on the Products' labeling and moreover that the Products were labeled as illegal dietary supplements with illegal delivery instruction is likely to mislead reasonable consumers to believe the product is legal to purchase.

64.   Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

65.   Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging.   Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

66.   Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members.  Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct.

67.   In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

**FIRST AMENDED CLASS ACTION COMPLAINT**

68.     Plaintiff and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

## COUNT II
### California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500 ("FAL")
### (On Behalf of the California Subclass)

69.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

70.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

71.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Id.

72.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Products misled consumers acting reasonably as to the ingredients and effectiveness of the Products.

**FIRST AMENDED CLASS ACTION COMPLAINT**

73.     Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because he purchased the Products in reliance on Defendant's false and misleading labeling claims that the Products, among other things, that the Products contained the ingredients stated on the Products' labeling and moreover that the Products were labeled as illegal dietary supplements with illegal delivery instruction as claimed on the Products' labeling and Defendant's website.

74.     Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

75.     Defendant profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

76.     As a result, Plaintiff, the California Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

77.     Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the California Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other

**FIRST AMENDED CLASS ACTION COMPLAINT**

act prohibited by law, including those set forth in this First Amended Class Action Complaint.

## COUNT III
### California's Consumer Legal Remedies Act
### Cal. Civ. Code § 1750 et seq. ("CLRA")
### (On Behalf of the California Subclass)

78.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

79.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

80.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

a.  § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.  § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.  § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.  § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

**FIRST AMENDED CLASS ACTION COMPLAINT**

81.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

82.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

83.     On or about December 2, 2019, a CLRA notice letter was served on Defendant that complies in all respects with California Civil Code § 1782(a). Plaintiff sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A subsequent copy of the letter was sent on February 25, 2020.  True and correct copies of Plaintiff's letters are attached hereto as **Exhibits B and C**.

84.     Pursuant to California Civil Code § 1780, Plaintiff seeks damages, injunctive relief, his reasonable attorney fees and costs, and any other relief that the Court deems proper.

**COUNT IV**
**Breach of Express Warranties**
**Cal. Com. Code § 2313(1)**
**(On Behalf of the California Subclass)**

85.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

**FIRST AMENDED CLASS ACTION COMPLAINT**

86. Through the Products' labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Products in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

87. Defendant breached the express warranties by selling Products that do not and cannot provide the promised benefits.

88. Plaintiff and the Class Members would not have purchased the Products had they known the true nature of the Products' ingredients and benefits and what the Products contained.

89. That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class members paid for the Products.

90. Furthermore, Defendant had actual knowledge of the defect in the Products purchased by Plaintiff, as well as the Products purchased by other members of the Class, because: (a) it has knowledge of the FDA's warning letter; and (b) it had actual knowledge of the ingredients and qualities of the ingredients in its Products by virtue of its own Products' testing and it knows that the affirmations and representations it makes concerning the benefits, ingredients and quantities on the Products' labeling and Defendant's website and advertising is false.

**FIRST AMENDED CLASS ACTION COMPLAINT**

91.     As a result of Defendant's breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

## COUNT V
### Breach of Implied Warranty of Merchantability
### Cal. Com. Code § 2314
### (On Behalf of the California Subclass)

92.     Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

93.     Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the Class that, among other things, that the Products were labeled as illegal dietary supplements with illegal delivery instruction.

94.     Plaintiff and the Class bought the Products manufactured, advertised, and sold by Defendant, as described herein.

95.     Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

96.     However, Defendant breached that implied warranty in that the Products provide no benefits, as set forth in detail herein.

97.     As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be

**FIRST AMENDED CLASS ACTION COMPLAINT**

merchantable in that they did not conform to promises and affirmations made on the container or label of the goods nor are they fit for their ordinary purpose of providing the benefits as promised.

98.    Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase prices.

## COUNT VI
**Declaratory Relief Under the Declaratory Judgment Act
(On Behalf of the Class and/or,
the California Subclass)**

99.    Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

100.    Plaintiff brings this cause of action on behalf of the Class and/or the California Subclass.

101.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

102.    Pursuant to 28 U.S.C. § 2201, *et seq.*, there is an actual controversy between Defendant and Plaintiff concerning whether:

a.    Defendant has misrepresented the ingredients and effectiveness of the Products; and

b.    Defendant knew or should have known of the misrepresentations regarding the efficacy of the Products.

**FIRST AMENDED CLASS ACTION COMPLAINT**

103.   Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

104.   Despite the studies which have proven Defendant's representations false, Defendant continues to represent the ingredients and effectiveness of the Products, and has otherwise failed to correct those misrepresentations.

105.   Accordingly, based on Defendant's repeated and continued misrepresentations, Plaintiff seeks a declaration that Defendant has misrepresented the ingredients and effectiveness of the Products and that its actions are unlawful.

106.   The declaratory relief requested herein will generate common answers that will settle the controversy related to the misrepresented labeling of the Products. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A.     Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiff as the class representative, and designating the undersigned as class counsel;

B.     Enter an order awarding Plaintiff and the class members their actual damages, treble damages, and/or any other form of monetary relief

**FIRST AMENDED CLASS ACTION COMPLAINT**

provided by law;

C.    Declare that Defendant is financially responsible for notifying all Class members of the problems with the Products;

D.    Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class;

E.    Defendant shall audit and reassess all prior customer claims regarding the Products, including claims previously denied in whole or in part;

F.    An order awarding Plaintiff and the classes pre-judgment and post-judgment interest as allowed under the law;

G.    For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, including expert witness fees; and

H.    For such other and further relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Dated:  February 25, 2020             Respectfully Submitted,

                                      By:  /s/ Gregory F. Coleman
                                           Gregory F. Coleman*
                                           Rachel Soffin*
                                           **GREG COLEMAN LAW PC**
                                           First Tennessee Plaza
                                           800 S. Gay Street, Suite 1100
                                           Knoxville, Tennessee 37929
                                           Tel: 865-247-0080
                                           greg@gregcolemanlaw.com
                                           rachel@gregcolemanlaw.com

                                           Jonathan Shub
                                           (CA Bar #237708)
                                           Kevin Laukaitis*
                                           **KOHN, SWIFT & GRAF, P.C.**
                                           1600 Market Street, Suite 2500
                                           Philadelphia, PA 19103
                                           Tel: 215-238-1700
                                           jshub@kohnswift.com
                                           klaukaitis@kohnswift.com

                                           Nick Suciu III*
                                           **BARBAT, MANSOUR & SUCIU PLLC**
                                           1644 Bracken Rd.
                                           Bloomfield Hills, Michigan 48302
                                           Tel: 313-303-3472
                                           nicksuciu@bmslawyers.com

                                           ***Admitted Pro Hac Vice***

                                           ***Counsel for Plaintiffs and The Class***

**FIRST AMENDED CLASS ACTION COMPLAINT**

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Gregory F. Coleman, declare as follows:

1.      I am an attorney at law licensed to practice in the State of Tennessee and a member of the bar of that Court.  I am the Founder and Managing Partner of Greg Coleman Law PC, counsel of record for Plaintiffs in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The First Amended Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the First Amended Complaint occurred in the Central District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Knoxville, Tennessee this 25th day of February, 2020.

<u>*s/ Gregory C. Coleman*</u>
Gregory C. Coleman

**FIRST AMENDED CLASS ACTION COMPLAINT**