Ian A. Stewart (State Bar No. 250689)
*Ian.Stewart@wilsonelser.com*
Daniel H. Lee (State Bar No. 217001)
*Daniel.Lee@wilsonelser.com*
**WILSON, ELSER, MOSKOWITZ,**
    **EDELMAN & DICKER LLP**
555 Flower Street, Suite 2900
Los Angeles, California 90071-2407
Telephone:   (213) 443-5100
Facsimile:    (213) 443-5101

Thomas J. Norby (Minnesota State Bar No. 0184780)
*Appearing Pro Hac Vice*
*tnorby@norbylawfirm.com*
**NORBY LAW FIRM**
2223 Copperfield Drive
Mendota Heights, Minnesota 55120
Telephone:   (651) 402-5270

Attorneys for Defendant
INFINITE PRODUCT COMPANY LLC,
d/b/a Infinite CBD

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM DASILVA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INFINITE PRODUCT COMPANY LLC, d/b/a Infinite CBD, a Colorado limited liability company<br><br>Defendant. | Case No.:    2:19-cv-10148 DMG<br>Hon. Dolly M. Gee<br><br>**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, TO STAY THE CASE PENDING GUIDANCE BY THE FDA**<br><br>Date:       April 17, 2020<br>Time:       9:30 a.m.<br>Location:  Courtroom 8C, 8th Floor<br>Judge:      Hon. Dolly M. Gee<br><br>Amended Complaint Filed:<br>February 25, 2020 |

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION .......................................................................................... 1

II.    LEGAL STANDARD .................................................................................. 3

     A.   Federal Rule of Civil Procedure 12(b)(1) ......................................... 3

     B.   Federal Rule of Civil Procedure 12(b)(6)......................................... 3

     C.   Federal Rule of Civil Procedure 12(f) .............................................. 4

III.   PLAINTIFF LACKS STANDING TO SUE UNDER ARTICLE III ........... 4

IV.    PLAINTIFF'S CLAIMS ARE PREEMPTED.............................................. 6

V.     THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM...... 7

     A.   Plaintiff's Failure to Serve A 30-Day Letter Before the Filing The
          Present Lawsuit Is Jurisdictional and Requires Dismissal Of
          Plaintiff's CLRA Damages Claim ...................................................... 7

     B.   Plaintiff's UCL, FAL And CLRA Causes Of Action Must Be
          Dismissed Because He Cannot Establish The Necessary Causal
          Link Between Any Purported Misrepresentation Or False
          Advertisement By Defendant And The Decision To Purchase A
          CBD Isolate Dropper. .......................................................................... 7

     C.   Plaintiff Fails to State a Cause of Action for Breach of Express
          Warranty.............................................................................................. 10

     D.   Plaintiff Fails to State a Cause of Action for Breach of Implied
          Warranty of Merchantability............................................................... 11

     E.   Plaintiff's Cause of Action for Declaratory Relief under the
          Declaratory Judgment Act Should be Dismissed ............................... 12

VI.    PLAINTIFF'S NON-CALIFORNIA CLAIMS MUST BE DISMISSED
      AND HIS MULTISTATE CLASS ALLEGATIONS STRICKEN.............. 13

     A.   Plaintiff Lacks Standing Under the Laws of Other States.................. 14

     B.   The Non-California Multistate Class Allegations Should Be
          Stricken .............................................................................................. 14

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

3566398v.2

1.   The Non-California Multistate Class Lacks a Class
     Representative...........................................................................15

2.   The Non-California Multistate Class Lacks Commonality
     and Predominance.....................................................................15

VII.   IF THE COURT DOES NOT DISMISS OR STRIKE THE FIRST
       AMENDED COMPLAINT, THE COURT SHOULD STAY THIS
       CASE PENDING FURTHER GUIDANCE BY THE FDA AS TO CBD
       PRODUCTS..................................................................................................18

A.   The Forthcoming CBD Guidelines by the FDA .................................18

B.   The Primary Jurisdiction Doctrine Favors Staying this Action..........22

VIII.   CONCLUSION ............................................................................................25

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

3566398v.2

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004)...........................................................................13

*Air Line Pilots Ass'n v. Miller*,
  523 U.S. 866 (1998) ........................................................................................18

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
  738 F.3d 1350 (Fed. Cir. 2013) .....................................................................15

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011)...........................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................4

*Assoc. of Am. Med. Coll. v. United States*,
  217 F.3d 770 (9th Cir. 2000)............................................................................3

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014)........................................................................15

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009)..........................................................................11

*Borchenk v. L'Oreal USA*
  389 F. Supp. 3d 769 (C.D. Cal 2019) ..............................................................6

*Bower v. AT&T Mobility, LLC*,
  196 Cal.App.4th 1545 (2011) ..........................................................................7

*Brown v. Danone*,
  2018 U.S. Dist. LEXIS 74692, * (N.D. Cal. May 1, 2018)..............................6

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ..........................................................................................6

*Cardinal Health 301, Inc. v. Tyco Elec. Corp.*,
  169 Cal. App. 4th 116 (2008) ........................................................................11

*Cattie v. Wal-Mart Stores, Inc.*
  504 F.Supp.2d 939 (S.D. Cal.2007) ........................................................8

*Chacanaca v. Quaker Oats Co.*,
  No. C 10– 0502 RS, 2010 WL 4055954 (N.D. Cal. Oct. 14, 2010) ....................9

*Chamberlan v. Ford Motor Co.*
  369 F.Supp.2d 1138 (N.D. Cal. 2005) ........................................................8

*Chronicle Publ'g Co. v. Nat'l Broad. Co.*,
  294 F.2d 744 (9th Cir. 1961) ..................................................................24

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ..............................................................................12

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008) ................................................................22

*Clinton v. Jones*,
  520 U.S. 681 (1997) ..............................................................................18

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ..................................................................18

*Cole v. GMC*,
  484 F.3d 717 (5th Cir. 2007) ..................................................................17

*Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*,
  642 F.3d 849 (9th Cir. 2011) ..................................................................12

*Crosby v. Nat'l   Trade*,
  *530 U.S. 363, 373 (2000)* ........................................................................6

*CytoSport, Inc. v. Vital Pharms, Inc.*,
  894 F. Supp. 2d 1285 (E.D. Cal. 2012) ......................................................5

*Daro*,
  151 Cal.App.4th 1099 ............................................................................8

*Davis v. Chase Bank U.S.A., N.A.*
  650 F.Supp.2d 1073 (C.D. Cal. 2009) ........................................................7

*Doe v. Texaco, Inc.*,
  2006 WL 2053504 (N.D. Cal. July 21, 2006) ..............................................8

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

3566398v.2

*Donohue v. Apple, Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012) .................................................................. 11

*Dunbar v. Medtronic, Inc.*,
  2014 U.S. Dist. LEXIS 94920 (C.D. Cal. 2014).................................................... 11

*eCash Techs. Inc. v. Guagliardo*,
  127 F.Supp.2d 1069 (C.D. Cal. 2000) ................................................................... 4

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993)................................................................................. 4

*Friedman v. 24 Hour Fitness USA, Inc.*,
  580 F. Supp. 2d 985 (C.D. Cal. 2008) ................................................................... 4

*Garrison v. Whole Foods Market Group, Inc.*,
  No. 13-05222-CV, 2014 WL 2451290 (N.D. Cal. June 2, 2014)....................... 18

*Gartin v. S & M NuTec LLC*
  (C.D. Cal. 2007) 245 F.R.D. 429............................................................................ 8

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................ 13

*Gianino v. Alacer Corp.*,
  846 F. Supp. 2d 1096 (C.D. Cal. 2012) ........................................................ 15, 16

*Greenfield*,
  18 F. Supp.3d at 1376 .......................................................................................... 23

*Hale v. Sharp Healthcare*,
  183 Cal. App. 4th 1373 (2010) .............................................................................. 7

*Hall v. Time, Inc.*,
  158 Cal.App.4th 847 (2008) .................................................................................. 8

*Health 301 Inc. v. Tyco Elec. Corp.*

169 Cal. App. 4th 116 (2008) ............................................................................... 11

*Herazo*,
  2015 U.S. Dist. LEXIS 96811................................................................................ 24

*In re Ferrero Litig.*,
  794 F.Supp.2d 1107 (S.D. Cal. 2011)..................................................................... 9

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

3566398v.2

*In re Hitachi TV Optical Block Cases*,
   2011 U.S. Dist. LEXIS 135 (S.D. Cal. 2011) ........................................................17

*In re iPhone 4S Consumer Litig.*,
   2014 U.S. Dist. LEXIS 19363 (N.D. Cal. 2014) ...........................................10, 11

*In re Tobacco II Cases*,
   46 Cal.4th 298 (2009) ........................................................................................7

*In re: Dalkon Shield IUD Products Liability Litigation*,
   693 F.2d 853 (9th Cir. 1982)..............................................................................18

*Kane v. Chobani, LLC*,
   No. 14-15670, 2016 WL 1161782 (9th Cir. Mar. 24, 2016) ........................18, 19

*Karim v. Hewlett-Packard Co.*,
   2014 U.S. Dist. LEXIS 65742, at *23-25 (N.D. Cal. 2014) ...............................17

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ........................................................................14

*Keith v. Buchanan*,
   (1985) 173 Cal.App.3d 13..................................................................................10

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994) .............................................................................................3

*Kowalsky v. Hewlett-Packard Co.*,
   No.:  10–CV–02176–LHK, 2011 WL 1466136 (N.D. Cal. Apr. 15, 2011) ....8, 15

*Laster v. T-Mobile USA, Inc.*
   407 F.Supp.2d 1181 (S.D. Cal. 2005)................................................................7, 8

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005)............................................................................18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................4

*Mazza*,
   666 F.3d at 589-94...............................................................................................15

*McDonnell Douglas Corp. v. Thiokol Corp.*
   124 F.3d 1173 (9th Cir. 1997)............................................................................10

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

3566398v.2

*McVicar v. Goodman Global, Inc.*,
   2015 WL 4945730 (C.D. Cal. Aug. 20, 2015).........................................................9

*Medical Diagnostic*,
   2018 WL 784456.......................................................................................................13

*Neu v. Terminix Intern., Inc.*,
   No. C 07–6472 CW, 2008 WL 2951390 (N.D. Cal. July 24, 2008) ....................8

*New Image Global, Inc. v. National Tobacco Company LP*,
   No. 09-06761—DMG (DTBx), 2010 WL 11506711 (C.D. Cal. March 15,
   2010).........................................................................................................................13

*Nordberg v. Trilegiant Corp.*
   (ND CA 2006) 445 F.Supp.2d 1082 .......................................................................15

*Pardini v. Unilever United States, Inc*.,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) ..................................................................14

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013).................................................................................6

*Rhoades*,
   504 F.3d at 1165......................................................................................................24

*Sateriale v. R.J. Reynolds Tobacco Co.*
   697 F3d 777 (9th Cir. 2012).................................................................................8, 9

*Schwartz v. Upper Deck Co.*,
   183 F.R.D. 672 (S.D. Cal. 1999)............................................................................17

*Serrano v. 180 Connect, Inc.*,
   478 F.3rd 1018 (9th Cir. 2007)...............................................................................14

*Skybolt Aeromotive Corp. v. Milspec Prods.*,
   No. 5:16-cv-616-oc-PRL, 2017 U.S. Dist. LEXIS 88597, at *29 (M.D.
   Fla. Jun. 9, 2017)....................................................................................................23

*Sullivan v. Oracle Corp*.,
   51 Cal. 4th 1191 (2011)..........................................................................................15

*Summit Tech, Inc. v. High-Line Med. Instruments Co.*
   922 F. Supp. 299 (C.D. Cal 1996) ...........................................................................5

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

3566398v.2

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
  307 F.3d 775 (9th Cir. 2002) .................................................................. 18, 22, 23

*Viggano v. Johnson & Johnson*,
  Case No. CV 14-7250, Dkt. # 55 (C.D. Cal. June 21, 2016) .............................. 19

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ................................................................................. 3

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ................................................................................................ 12

**Statutes**

7 U.S.C. § 1639(o)-(s) .................................................................................................. 6

21 U.S.C. § 343 ............................................................................................................. 3

21 U.S.C. § 343(q) ........................................................................................................ 3

21 U.S.C. § 343-1(a)(4) ................................................................................................ 3

21 U.S.C. § 337(a) ........................................................................................................ 6

28 U.S.C. § 2201 ......................................................................................................... 12

Agricultural Marketing Act of 1964 § 297A ............................................................. 20

Cal. Bus. & Prof. Code § 17200 ............................................................................... 1, 6

Cal. Bus. & Prof. Code § 17500 .................................................................................. 1

Cal. Bus. & Prof. Code, § 17203 ................................................................................. 7

Cal. Bus. & Prof. Code, § 17204 ................................................................................. 7

Cal. Bus. & Prof. Code, § 17535 ................................................................................. 7

Cal. Civ. Code § 1750 .................................................................................................. 2

Cal. Civ. Code § 1782 .................................................................................................. 7

Cal. Com. Code § 2607(3)(A) .................................................................................... 12

CO. Rev. Stat., §35-61-108(2) ................................................................................... 16

Declaratory Judgment Act ........................................................................................... 2

ix

Florida Stat., §581.217 (2019 ...................................................................16

Ind. Code Ann. §24-4-21-4 (2018)…………………………………………16, 17

LA. Stat. Ann. § 3:1482(C)(3)(2019)…………………………………………  16

OK SB238 (2019)
    (available at https://legiscan.com/OK/text/SB238/id/2010779) …………….16

Organic Food Production Act …………………………………………………..6

230-RICR-80-10-1 (2018) …………………………………………………..16

Tex. Code Ann. Health & Safety §443.205(a)(2019) ……………………………16

Utah Admin. Code R68-26-5(3) (2019) …………………………………   16, 17

**Other Authorities**

Agricultural Improvement Act of 2018
    *Pub. L. No. 115-334, 132 Stat. 4908-11* ..................................................6

Agriculture, Rural Development, Food and Drug Administration, and
    Related Agencies Appropriations Bill, 2020,
    116 S. Rpt. 110, (Sept. 2019)...........................................................20

*FDA Acting Commissioner's Remarks to the 2019 FDLI Annual Conference*,
    (May 2, 2019)
    https://www.fda.gov/news-events/speeches-fda-officials/fda-acting-
    commissioners-remarks-2019-fdli-annual-conference-05022019
    (last visited Oct. 18, 2019) ............................................................23

*FDA, REGULATORY PROCEDURES MANUAL § 4-11*
    *(March 2010)* ..................................................................20

*New York Dep't of Agriculture and Markets, Frequently Asked Questions*
    *(July 16, 2019)*
    *https://agriculture.ny.gov/system/files/documents/2019/10/CBD_FAQs.pdf*) (last
    visited Jan. 17, 2020)……………………………………………………   16

*Scientific Data and Information About Products Containing Cannabis or*
    *Cannabis-Derived Compounds;*

3566398v.2

*U.S. Food & Drug Admin., Public Hearing; Request for Comments*
   84 FR 12969 (Apr. 3, 2019)................................................................... 19

State of Alabama, Office of the Attorney General, Public Notice
   (Updated August 14, 2019)
   https://www.alabamaag.gov/Documents/News/PUBLIC%20NOTICE%20RE%2
   0CBD%20August%202019.pdf) (last visited Jan. 17, 2020)………………… 16

U.S. Congressional Bill 5587……………………………………………………… 20

U.S. Senate Bill 2522.......................................................................................20

**Rules**

Fed. R. Civ. P. Rule 12(b)(1).......................................................................3

Fed. R. Civ. P. Rule 12(b)(6).......................................................................3

Fed. R. Civ. P. Rule 12(f) ...........................................................................4

Fed. R. Civ. P. Rule 23 ...............................................................................14

**Constitutional Provisions**

U.S. Const., Art. III................................................................3, 4, 5, 13, 25

3566398v.2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The First Amended Complaint ("FAC") is another feeble attempt by Plaintiff to state an untenable claim. After Defendant filed a Motion to Dismiss ("MTD") as to Plaintiff's original complaint, he apparently realized that he could not state a claim as he chose not to oppose the MTD. The Court graciously did not deem the lawsuit dismissed.  Rather, the Court granted the MTD, and gave Plaintiff an opportunity to file an amended complaint.  *See* Dkt. # 42.   Yet, Plaintiff made no substantive changes to the amended complaint.  *See* Request for Judicial Notice ("RJN"), Ex. 1. Plaintiff was given time and opportunity to cure defects but failed to do so. The FAC suffers from the same defects as the original complaint. Defendant's motion should therefore be granted again, but this time, with prejudice.

Plaintiff DaSilva is a California citizen and a resident of Los Angeles County. (FAC ¶ 13.) He allegedly purchased a CBD Isolate Dropper on November 12, 2018, through the Defendant's website for the amount of $43.15.  CBD Isolate Dropper is a product sold by the Defendant containing cannabidiol ("CBD"), a naturally-occurring, indigenous nutrient of the plant *Cannabis sativa L.*  Plaintiff, however, appears to have had no other experience with Defendant or the CBD Isolate Dropper, other than simply buying it.  Plaintiff does not allege that he used the product. He does not allege dissatisfaction with the product. He does not allege physical harm. He does not allege purchasing any CBD based product from Defendant other than the CBD Isolate Dropper. Plaintiff instead makes conclusory allegations of misrepresentation and false advertisement, not based on any personal experience, but based on language lifted from a warning letter sent recently to the Defendant by the FDA, which is attached as an exhibit to the First Amended Complaint ("FAC" or "Amended Complaint").  On that basis, Plaintiff asserts claims under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq*.), False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500 *et seq*.), and Consumer

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 *et seq*.), as well as claims for breach of implied warranty, and breach of express warranty under California law, and for declaratory relief under the Declaratory Judgment Act**.** As discussed in detail below, Plaintiff lacks standing to assert his claims, and fails to state a claim for which relief can be granted.

Although Plaintiff relies entirely upon the FDA warning letter as the basis for his allegations that the CBD Isolate Dropper is illegal under federal law, the FDA makes no statement or allegation with respect to the CBD Isolate Dropper. The warning letter pertains only to other products sold by Defendant, none of which were purchased or consumed by Plaintiff. Plaintiff misleads the Court into believing it does, however, and does so in a disingenuous manner (by making alteration to the middle of the paragraph so that the difference would be difficult to spot by the reader), as shown in the side-by-side comparison of what the FDA Warning Letter actually says, and what Plaintiff claims it says, in the FAC. *See* RJN, Ex. 2.

Furthermore, Plaintiff improperly seeks to represent class members for several classes of products that Plaintiff did not purchase, and from which he cannot have suffered an injury. Specifically, Plaintiff seeks recovery on both an individual and class basis for alleged damage or loss arising from ten (10) different CBD products, including a wide variety of both consumable and topical consumer products.

Plaintiff also alleges statutory class allegations claims on behalf purported non-California class members under the consumer protection and warranty laws of various other states. As discussed in detail below, Plaintiff's non-California class claims must be stricken as the law in the Ninth Circuit is clear that he cannot maintain such a claim.

Finally, in the event the Court does not dismiss nor strike the FAC, Defendant respectfully submits that the Court should abstain based on the primary jurisdiction doctrine until the Food & Drug Administration ("FDA") has provided further

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

1    clarification. The FDA is poised to issue regulations and guidance on hemp-based

2    products such as the CBD Isolate Dropper. As the Court is aware, dietary ingredients

3    are regulated by a comprehensive regulatory scheme pursuant to the Federal Food,

4    Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 343, *et seq*.  Congress determined

5    that the FDCA labeling standards must be followed nationwide and uniformly, and

6    thus the FDCA has an express preemption provision which provides that "no State

7    or political subdivision of a State may directly or indirectly establish under any

8    authority or continue in effect as to any food in interstate commerce…any

9    requirement for nutrition labeling of food that is not identical to the requirement of

10   section 343(q) of this title." 21 U.S.C. § 343-1(a)(4).

11   **II.    LEGAL STANDARD.**

12        **A.    Federal Rule of Civil Procedure 12(b)(1)**

13        Dismissal is proper under Fed. R. Civ. P. Rule 12(b)(1) if the plaintiff does

14   not satisfy Article III standing requirements.  *See e.g. Assoc. of Am. Med. Coll. v.*

15   *United States*, 217 F.3d 770, 778 (9th Cir. 2000); *Kokkonen v. Guardian Life Ins.*

16   *Co.*, 511 U.S. 375, 377 (1994).  Motions to dismiss for lack of subject matter

17   jurisdiction may attack jurisdiction facially or factually.  *See White v. Lee*, 227

18   F.3d 1214, 1242 (9th Cir. 2000).  In resolving a factual attack, the district court

19   may consider extrinsic evidence.  *See id*.

20        **B.    Federal Rule of Civil Procedure 12(b)(6)**

21        "[T]o survive a motion to dismiss, '[an amended] complaint must contain

22   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

23   on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]hreadbare recitals of

24   the elements of a cause of action, supported by mere conclusory statements, do not

25   suffice.'"  *Id.* at 678.  The court is not required to accept as true allegations that are

26   merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See*

27   *id.* "[A] court may consider documents which are not physically attached to the FAC

28   but 'whose contents are alleged in [the amended] complaint and whose authenticity

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT**

3566398v.2

1   no party questions.'" *eCash Techs. Inc. v. Guagliardo*, 127 F.Supp.2d 1069, 1074

2   (C.D. Cal. 2000).

3         **C.**    **Federal Rule of Civil Procedure 12(f)**

4         Federal Rule of Civil Procedure 12(f) provides that a court "may strike from

5   a pleading an insufficient defense or any redundant, immaterial, impertinent, or

6   scandalous matter." Motions to strike can be granted if the allegations have no

7   possible relation to the controversy and may cause prejudice to one of the parties.

8   *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008).

9   The Ninth Circuit has defined "immaterial" matter as "that which has no essential or

10  important relationship to the claim for relief or the defenses being pleaded" and

11  "impertinent" matter as "statements that do not pertain, and are not necessary, to the

12  issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

13  **III.**    **PLAINTIFF LACKS STANDING TO SUE UNDER ARTICLE III**

14        Article III standing requires a plaintiff to show that he or she suffered "'an

15  invasion of a legally protected interest' that is 'concrete and particularized' and

16  'actual or imminent, not conjectural or hypothetical.'" *See Lujan v. Defs. of Wildlife*,

17  504 U.S. 555, 560 (1992).

18        In the FAC, Plaintiff again continues to seek redress for many products other

19  than that the sole product he purchased from the Defendant – the CBD Isolate

20  Dropper.  Plaintiff seeks redress in the FAC for "Products" or "CBD Products" sold

21  by the Defendant, defined as "Absolute Zero 99% + CBD Isolate," "Freezing Point

22  CBD Topical Cream," "Afterglow Healing Oil 100 mg CBD Total," "Nano

23  Enhancer Pure Nano CBD," "Nano Freezing Point CBD Topical Cream," "Asteroid

24  Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," "Isolate Dropper",

25  and "Nano Non Dairy Creamer." (FAC ¶ 1.)  Under Article III, Plaintiff has no

26  standing pertaining to products he did not purchase and therefore cannot allege

27  claims in that regard.

28

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT**

1   Moreover, these ten products vary widely. Some are consumable and others
2   are meant to be applied topically. The consumable products have different means of
3   ingestion, with some being edible and others ingested sublingually. The products are
4   purchased by consumers for widely varying reasons, and are used by consumers very
5   differently. Plaintiff, however, has no connection whatsoever to any of the subject
6   products but one.

7   Plaintiff alleges that he purchased a single product on November 12, 2018 –
8   a CBD Isolate Dropper, for which he paid the amount of $43.10. Plaintiff fails to
9   allege any physical injury, harm or loss based on his personal experience with the
10  product.  He does not allege that he consumed the product.  He does not identify any
11  specific statement or representation made by Defendant pertaining to the CBD
12  Isolate Dropper, nor does he allege that he saw or relied on any unidentified
13  representation made by Defendant when he decided to purchase the CBD Isolate
14  Dropper. Although Plaintiff predicates all of the causes of action in the FAC on the
15  alleged federal illegality of the CBD Isolate Dropper based on a FDA warning letter,
16  nowhere in the warning letter is there any reference or allegation pertaining to the
17  CBD Isolate Dropper. Plaintiff affirmatively misrepresents to the Court what is
18  stated in the FDA letter, and does so in a devious manner.  *See* RJN, Ex. 2.  Plaintiff
19  also erroneously relies on claims made in the FDA letter as if it's law. But such
20  statements are not official actions taken by the FDA.  "A Warning Letter is informal
21  and advisory . . . *FDA does not consider Warning Letters to be a final agency action* on
22  which it can be sued." FDA, REGULATORY PROCEDURES MANUAL § 4-11 (Mar. 2010)
23  (emphasis added). "FDA warning letters are informal and advisory, and do not amount
24  to an FDA action." *CytoSport, Inc. v. Vital Pharms., Inc.*, 894 F. Supp. 2d 1285,
25  1294 (E.D. Cal. 2012), *citing Summit Tech., Inc. v. High-Line Med. Instruments Co.*,
26  922 F. Supp. 299, 306 (C.D. Cal. 1996). Based on the foregoing, there is no actual
27  or concrete harm nor one that is traceable to the Defendant.  Plaintiff lacks standing
28  to sue under Article III. The FAC therefore must be dismissed in its entirety.

## IV.    PLAINTIFF'S CLAIMS ARE PREEMPTED

Where state law claims stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, as laid out in a comprehensive federal regulatory scheme, those claims are impliedly preempted by that federal scheme. *See Crosby v. Nat'l Trade,* 530 U.S. 363, 373 (2000).  In *Brown v. Danone* a food product mislabeling class action case where the plaintiffs' asserted violation of California consumer protection laws CLRA and UCL, the court found preemption under the Organic Food Production Act and dismissed the FAC. *See Brown v. Danone*, 2018 U.S. Dist. LEXIS 74692, * (N.D. Cal. May 1, 2018).

In the present case, the Agriculture Improvement Act of 2018 (the "2018 Farm Bill"), Pub. L. No. 115-334, 132 Stat. 4908–11, explicitly recognized the FDA's authority to regulate products containing cannabis-derived compounds, including hemp-derived products under the FDCA. 7 U.S.C. §§ 1639(o)–(s).  Plaintiff admits that the FDA has authority over his claim, and that the FDCA applies to its claims as he cites to a letter from the FDA in the FAC, and essentially bases his entire lawsuit on that letter.  The preemption of the FDCA arises from the United States' exclusive jurisdiction to bring enforcement actions. 21 U.S.C. § 337(a). The Supreme Court has stated, "[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with" the Act. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001). The Ninth Circuit applied *Buckman* in *Perez*, and recognized that "private enforcement of the [FDCA] is barred[.]" *Perez v. Nidek Co.*, 711 F.3d 1109, 1119 (9th Cir. 2013); *see also Borchenk v. L'Oreal USA*, 389 F. Supp. 3d 769 (C.D. Cal 2019).

Here, plaintiff's state law claims are preempted by regulations promulgated by the FDA, and the FDCA which provides a comprehensive scheme for regulating the product at issue in this case.  The court should dismiss Plaintiff's state law claims.

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

**V.     THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM**

**A.     Plaintiff's Failure to Serve A 30-Day Letter Before Filing The Present Lawsuit Is Jurisdictional And Requires Dismissal Of Plaintiff's CLRA Damages Claim.**

California Civil Code Section 1782 provides that "thirty days or more" prior to filing a CLRA action "for damages" the consumer "shall" notify the potential defendant "of the particular alleged violation" and that he or she "correct, repair, replace or otherwise rectify the goods or services alleged to be in violation of the CLRA. Federal courts in California have found that failure to serve the 30-day letter is jurisdictional and requires dismissal of the CLRA damages claim. *Davis v. Chase Bank U.S.A., N.A.* 650 F.Supp.2d 1073, 1088-1089 (C.D. Cal. 2009); *Laster v. T-Mobile USA, Inc.* 407 F.Supp.2d 1181, 1195-1196 (S.D. Cal. 2005).

Here, Plaintiff fails to allege that he gave such notice to the Defendant before filing the present lawsuit on November 27, 2019.  That is because he can't.  A CLRA demand letter was sent but **after** the FAC was filed, on December 2, 2019.  *See* Ex. B to FAC.  Plaintiff mailed another CLRA demand letter on February 25, 2020, after the First Amended Complaint was filed, but this does not cure the defect. *See* Ex. C to FAC. Accordingly, Plaintiff's claim for damages under the CLRA should be dismissed.

**B.     Plaintiff's UCL, FAL And CLRA Causes Of Action Must Be Dismissed Because He Cannot Establish The Necessary Causal Link Between Any Purported Misrepresentation Or False Advertisement By Defendant And The Decision To Purchase A CBD Isolate Dropper.**

A plaintiff's injury must come "as a result of" the unfair competition or a violation of the false advertising law." Bus. & Prof. Code, §§ 17203, 17204, 17535; *In re Tobacco II Cases*, 46 Cal.4th 298, 328 (2009); *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1382 (2010); *Bower v. AT&T Mobility, LLC*, 196 Cal.App.4th

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

1545, 1554 (2011).  "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of causal connection or reliance on the alleged misrepresentations."  *Id*.  "[T]here must be a causal connection between the harm suffered and the unlawful business activity.  That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law."  *Daro*, supra, 151 Cal.App.4th at 1099.

In other words, there must be evidence that the plaintiff both *perceived and relied upon* Defendant's advertisements or misrepresentations in entering into the transactions at issue.  *Laster*, 40 F. Supp. at 1194.  Dismissal of a UCL or FAL claim is appropriate if the plaintiff cannot prove that he "entered into the transaction *as a result of* the alleged misrepresentations.  *Id*. (dismissing UCL claim because the named plaintiff did not allege he saw, read, or in any way relied on the allegedly false advertisements); *Doe v. Texaco, Inc.*, 2006 WL 2053504 (N.D. Cal. July 21, 2006); *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 849 (2008) ("The phrase 'as a result of in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation.).  "[A]ctual reliance is an element of a CLRA claim."  *Cattie v. Wal-Mart Stores, Inc.* 504 F.Supp.2d 939, 946 (S.D. Cal. 2007) ("California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation"); *Chamberlan v. Ford Motor Co.* 369 F.Supp.2d 1138, 1147 (N.D. Cal. 2005) (relief under CLRA requires proof of loss causation); *Gartin v. S & M NuTec LLC* (C.D. Cal. 2007) 245 F.R.D. 429, 440; *Sateriale v. R.J. Reynolds Tobacco Co.* 697 F3d 777, 793 (9th Cir. 2012) (affirming district court's dismissal of a CLRA claim due to lack of reliance on the defendant's announcement).

Because of similarity in standards utilized, courts often address UCL, FAL and CLRA claims in tandem.  *See e.g. Kowalsky v. Hewlett-Packard Co.*, No.: 10–CV–02176–LHK, 2011 WL 1466136, at *4 (N.D. Cal. Apr. 15, 2011); *Neu v. Terminix Intern., Inc.*, No. C 07–6472 CW, 2008 WL 2951390, at *3–4 (N.D. Cal.

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

July 24, 2008) (analyzing UCL and FAL claims together); *Chacanaca v. Quaker Oats Co.*, No. C 10– 0502 RS, 2010 WL 4055954, at * 11–12 (N.D. Cal. Oct. 14, 2010) (same); *Sateriale v. R.J. Reynolds Tobacco Co.* 697 F3d 777, 793 (9th Cir. 2012) (analyzing UCL and CLRA claims together).

Here, once again, the FAC fails to meet the causation requirement.  Plaintiff did not perceive or rely upon any advertisement or representation made by the Defendant before he decided to purchase a CBD Isolate Dropper. (FAC ¶ 13.)  There is no allegation in the FAC demonstrating any causal link between Plaintiff's decision to purchase the product at issue and any alleged label claim, marketing statement, advertisement or representation. Plaintiff instead makes conclusory allegations of misrepresentation and false advertisement, not based on any personal experience, but based on language lifted from a warning letter sent recently to the Defendant by the FDA, which is attached as an exhibit to the FAC. Furthermore, Defendant's website is dynamic. There will be no way for Plaintiff to now identify what may have been represented before or after the alleged purchase date of November 12, 2018. *See McVicar v. Goodman Global, Inc.*, 2015 WL 4945730 (C.D. Cal. Aug. 20, 2015) (plaintiffs, purchaser of a new home never visited defendant's website nor read any advertisement prior to purchasing defendant's allegedly defective heating and air conditioning unit, and thus could not prove causation and could not maintain a UCL claim); *In re Ferrero Litig.*, 794 F.Supp.2d 1107, 1112  (S.D. Cal. 2011) (UCL plaintiffs who sued manufacturer of Nutella over health claims on label and on website lacked standing to sue over website claims where they failed to allege that they actually viewed the website before purchase.)

Moreover, it bears repeating that although Plaintiff predicates all of the causes of action in the FAC on the alleged federal illegality of the CBD Isolate Dropper based on the subject FDA warning letter, nowhere in the warning letter is there any reference or allegation pertaining to the CBD Isolate Dropper. The statements within

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

the FDA warning letter pertain only to other products sold by Defendant, none of which were purchased or consumed by Plaintiff.

Although the above analysis is specific to Plaintiff's failure to causally link any cause of action under the California consumer protection statutes to his alleged purchase of the CBD Isolate Dropper, it goes without saying that Plaintiff also has no colorable claim under the subject statutes with respect to any of the remaining CBD products that he did not purchase or use. Based on the foregoing, dismissal is proper as to Plaintiff's claims under the UCL, FAL and CLRA.

**C.**   **Plaintiff Fails to State a Cause of Action for Breach of Express Warranty.**

"[A] breach of express warranty claim requires that the plaintiff identify a '*specific and unequivocal* written statement' about the product that constitutes an '*explicit guarantee*.'" *In re iPhone 4S Consumer Litig.*, 2014 U.S. Dist. LEXIS 19363, at *28-29 (N.D. Cal. 2014). Plaintiff must also demonstrate that an affirmation or promise allegedly made the seller was "part of the basis of the bargain." *See*, *e.g.*, *McDonnell Douglas Corp. v. Thiokol Corp.* 124 F.3d 1173, 1176 (9th Cir. 1997); *Keith v. Buchanan*, (1985) 173 Cal.App.3d 13, 20.

Here, once again, Plaintiff's claim must be dismissed he once again failed to identify any affirmation, based on his personal experience, made by the Defendant to him, that constitutes an "explicit guarantee."  Plaintiff once again, also failed to show how a purported express warranty was the part of the basis of the bargain.

Instead, Plaintiff merely pleads as follows: "Through the Products' labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were 'part of the basis of the bargain,' in that Plaintiff and the Class purchased the Products in reasonable reliance on those statements." (FAC ¶ 86.)  These vague and conclusory allegations fail to identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee, as required under California law to plead a viable cause of action.

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

Furthermore, to state a warranty claim, the FAC must "plead that notice of the alleged breach was provided to the seller within a reasonable time." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011). As a matter of law, notice is not provided "within a reasonable time" if it was not given "pre-suit." *Id.*; *see also iPhone 4S*, 2014 U.S. Dist. LEXIS 19363, at *28-29. Here, Plaintiff does not allege that he provided pre-suit notice to Defendant of any asserted breach of warranty. This requires dismissal. *See Dunbar v. Medtronic, Inc.*, 2014 U.S. Dist. LEXIS 94920, at *21 (C.D. Cal. 2014).  The purpose of the pre-suit notice requirement is "to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court," *Alvarez*, 656 F.3d at 932, or "to afford the seller an opportunity to engage in settlement discussion and prepare for litigation." *Cardinal Health 301, Inc. v. Tyco Elec. Corp.*, 169 Cal. App. 4th 116, 137 (2008).  Despite Plaintiff's claim, notice cannot be provided by filing a lawsuit. *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929-30 (N.D. Cal. 2012).

For these reasons, Plaintiff has not pled a viable cause of action for breach of any express warranty pertaining to the CBD Isolate Dropper. It again goes that saying that Plaintiff has no colorable claim for breach of express warranty with respect to any of the remaining CBD products that he did not purchase or use.

## D.   Plaintiff Fails to State a Cause of Action for Breach of Implied Warranty of Merchantability.

Plaintiff once again fails to sufficiently plead that the CBD Isolate Dropper was non-merchantable. To be "merchantable," goods must merely be "fit for [the]ordinary purpose[] for which such goods are used." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009). This "does not impose a . . . requirement that goods precisely fulfill the expectation of the buyer," or that they comply with every promise the manufacturer has made (which is the role of express warranty). *Viggiano*, 944 F. Supp. 2d at 896. "Instead, it provides for a minimum level of quality." *Id.* Thus, "[a] plaintiff who claims a breach of the implied warranty of

merchantability must show that the product did not possess *even the most basic degree of fitness* for ordinary use." *Id*. (emphasis added).

Here, Plaintiff once again fails to allege that the CBD Isolate Dropper lacks "even the most basic degree of fitness for ordinary use." Plaintiff instead continues to make conclusory allegations about many products he did not even purchase, and not based on any personal experience, but based on language lifted from a warning letter sent recently to the Defendant by the FDA. None of these allegations establish that the CBD Isolate Dropper was non-merchantable. *Id*.

Plaintiff also once again fails to allege that he took reasonable steps to notify Defendants within a reasonable time that the product was not suitable as he is required to do. Cal.Com.Code § 2607(3)(A). Therefore, Plaintiff's claim of breach of implied warranty of merchantability should be dismissed both with respect to any alleged implied warranty pertaining to the CBD Isolate Dropper and with respect to any of the remaining CBD products that he did not purchase or use.

### E.   Plaintiff's Cause of Action for Declaratory Relief under the Declaratory Judgment Act Should be Dismissed.

Declaratory relief is an equitable remedy. It is not an independent cause of action. The Declaratory Judgment Act, 28 U.S.C. § 2201, does not create any substantive rights or causes of action. It is "a remedial arrow in the district court's quiver; it create[s] an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). A district court may, "in the sound exercise of its judgment," dismiss a request for declaratory relief if it determines that a declaratory judgment "will serve no useful purpose." *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 852 (9th Cir. 2011). Furthermore a "prayer for injunctive and declaratory relief requires an assessment…of whether the plaintiff has sufficiently shown a real and immediate threat of future harm." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT**

3566398v.2

1   (1983).  "Past exposure to [allegedly] illegal conduct does not in itself show a present

2   case or controversy regarding injunctive relief."  *See id.*

3          Here, Plaintiff still has not alleged a likelihood of future injury. There are no

4   facts alleged to support the possibility of a Plaintiff of any future purchase of another

5   CBD Isolate Dropper such that he cannot allege imminent or future harm.  To the

6   contrary, a fair reading of the FAC supports the reasonable conclusion that Plaintiff

7   will not purchase more of Defendant's products.  Therefore, the possibility of future

8   purchase of CBD Isolate Dropper is "too speculative and contingent to create a case

9   or controversy under Article III" because it is dependent on "discretionary

10  decisions" and "multiple uncertain contingencies."  *See Medical Diagnostic*, 2018

11  WL 784456, at *7.   Furthermore, to grant the relief requested, the Court would have

12  to act upon a hypothetical state of the law as to legality of sale of CBD products due

13  to pending further guidance and regulation of CBD products by the FDA.  *New

14  Image Global, Inc. v. National Tobacco Company LP*, No. 09-06761—DMG

15  (DTBx), 2010 WL 11506711, * 5 (C.D. Cal. March 15, 2010); *Adams v. Johnson*,

16  355 F.3d 1179, 1183 (9th Cir. 2004) (mere "conclusory allegations of law and

17  unwarranted inferences are insufficient to defeat a motion to dismiss.")   This

18  controversy is neither real nor immediate, and the Court should therefore dismiss

19  Plaintiff's cause of action for declaratory relief.

20  **VI.   PLAINTIFF'S NON-CALIFORNIA CLAIMS MUST BE DISMISSED**

21          **AND HIS MULTISTATE CLASS ALLEGATIONS STRICKEN**

22          "Sometimes the issues are plain enough from the pleadings to determine

23  [that] the interests of absent class members are [not] fairly encompassed within the

24  named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

25  Plaintiff alleges a class action on behalf of all persons in the United States who

26  purchased Defendant's CBD Products, or in the alternative, on behalf of all

27  persons in the State of California who purchased Defendant's CBD. (FAC ¶ 42-

28  43.)   However, Plaintiff falls well short of establishing "with sufficient

---

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT**

particularity" facts "indicating that it is not a legal certainty" that his class action claim meets the jurisdictional requirements of the Class Action Fairness Act ("CAFA"). No evidence has been submitted through affidavits or otherwise establishing the $5 million amount in controversy requirement. *See e.g. Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 (9th Cir. 2007). Moreover, in the FAC, Plaintiff admits that there are only "thousands of consumers" in the purported class which is not enough to satisfy the amount in controversy requirement.  (FAC ¶ 49.) As the purchase price for the one product Plaintiff bought was $43.15, the class would require more than 115,000 members to satisfy the $5 million jurisdictional minimum. (FAC ¶ 13.) As such, Plaintiff cannot properly invoke jurisdiction under CAFA and the class allegations should therefore be stricken.

Furthermore, Plaintiff is not a member of a purported non-California class. He therefore lacks standing to assert claims on behalf of such purported classes, and thus such purported classes lack a class representative. Furthermore, under Ninth Circuit precedent, similar consumer-protection actions that seek to certify multistate classes fail the commonality and predominance requirements of Rule 23.  For these reasons, the subject class allegations must be stricken from the FAC.

### A.    Plaintiff Lacks Standing Under the Laws of Other States

Plaintiff is a citizen of California and he resides in Los Angeles County where he purchased the CBD Isolate Dropper.  (FAC ¶ 13.)  "[A] plaintiff who is not a resident of a state lacks standing to represent . . . [other] individuals asserting claims under the laws of that state." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 547 n.129, 548-49 (C.D. Cal. 2012). Plaintiff's claims under other states' laws, therefore, must be dismissed. *See Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) ("where . . . a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal").

### B.    The Non-California Multistate Class Allegations Should Be Stricken

14

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

1.   **The Non-California Multistate Class Lacks a Class
Representative**

Plaintiff is a California resident and alleges harm based on California law.
Plaintiff is not a member of a putative class from the other, non-California states. It
is axiomatic that no class can be certified without a class representative who belongs
to the class. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014).
A non-California multistate class, without a class representative, cannot be certified.

2.   **The Non-California Multistate Class Lacks Commonality
and Predominance**

Even if Plaintiff could somehow represent non-California multistate classes,
those classes still could not be certified because variations among the respective
states' laws would render a class-wide trial impossible.  California's statutes do not
apply outside California's borders. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191,
1207 (2011) (UCL does not operate extraterritorially); *Allergan, Inc. v. Athena
Cosmetics, Inc.*, 738 F.3d 1350, 135859 (Fed. Cir. 2013) (Commerce Clause
precludes extraterritorial application of California consumer-protection laws); the
CLRA is actionable only by California residents.  *Nordberg v. Trilegiant Corp.* 445
F.Supp.2d 1082, 1096 (N.D. Cal. 2006).

Even if California's statutes could apply extraterritorially, California choice-of-
law principles dictate that the claims of out-of-state class members "should be
governed by" the "laws of the jurisdiction in which the transaction took place,"
*Mazza*, 666 F.3d at 589-94.  District courts in California have long relied on *Mazza's*
choice-of-law analysis to deny requests to certify nationwide state-law based class
actions.  *See Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1104 (C.D. Cal. 2012);
*Kowalsky v. Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS 34597 (N.D. Cal. Mar.
14, 2012).  As Central District Judge Cormac Carney noted in a food-mislabeling
case, a "nationwide class action" asserting statutory and common-law claims under
the laws of every state "would be . . . very unfair and inefficient," and "trial would

3566398v.2

devolve quickly into an unmanageable morass of divergent legal issues." *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1103-04 (C.D. Cal. 2012).

A lawsuit based on CBD product labeling and marketing is particularly ill-suited for nationwide class treatment. Not only is the FDA position evolving, but each state has a unique and widely disparate stance on CBD products under state law due to their individual authorities to regulate food safety within their own boarders. Some states have policies that prohibit the use of CBD for human consumption while other states expressly permit CBD to be added to foods and beverages or marketed as dietary supplements. Yet other states, like New York[1] and Louisiana[2] allow for the sale of dietary supplements or topical products that contain CBD, but not foods or beverages that contain the ingredient.

Several states expressly permit the sale of CBD products for human consumption, including Alabama[3], Colorado[4], Florida[5], Indiana[6], Oklahoma[7], Rhode Island[8], Texas[9] and Utah[10]. Even though CBD products are permitted by these states, regulations governing its manufacture and sale differ greatly. Oklahoma, for example, passed legislation expressly permitting the sale of CBD products within the state. *See* Okla. Ann. §63-1-1431(A). The three-page bill requires any manufactured product containing CBD to include a label which contains the country of origin of the CBD and whether the CBD is synthetic or natural. *Id.*

---

[1] *See* New York Dep't of Agriculture and Markets, *Frequently Asked Questions* (July 16, 2019) (*available at* https://agriculture.ny.gov/system/files/documents/2019/10/CBD_FAQs.pdf) (last visited Mar. 16, 2020).
[2] LA. Stat. Ann. § 3:1482(C)(3)(2019)
[3] *See* State of Alabama, Office of the Attorney General, *Public Notice* (Updated August 14, 2019) (available at https://www.alabamaag.gov/Documents/News/PUBLIC%20NOTICE%20RE%20 CBD%20August%202019.pdf) (last visited Mar. 16, 2020)
[4] *See* CO. Rev. Stat., §35-61-108(2)
[5] *See* §581.217, Fla. Stat. (2019)
[6] *See* Ind. Code Ann. §24-4-21-4 (2018)
[7] *See* OK SB238 (2019) (available at https://legiscan.com/OK/text/SB238/id/2010779)
[8] *See* 230-RICR-80-10-1 (2018)
[9] *See* Tex. Code Ann. Health & Safety §443.205(a)(2019)
[10] *See* Utah Admin. Code R68-26-5(3) (2019)

16

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT**

3566398v.2

The rules governing CBD in Indiana and Utah are more stringent. Utah requires all CBD products sold within the state to be registered with Utah Department of Agriculture and Food. *See* Utah Admin. Code R68-26-5(3) (2019). Both Utah and Indiana implement strict labeling guidelines requiring product labels to include a scannable bar code or QR code linked to a document containing the batch identification number, the product name, the batch date, an expiration date, and a link to the certificate of analysis for the specific batch. *See* Utah Admin. Code R68-26-5(3) (2019) and Ind. Code Ann. §24-4-21-4 (2018).

Given that state regulation of CBD products are widely variable, lawsuits based on CBD labeling rules are not suited for nationwide class treatment. Furthermore, it will be impossible to determine what alleged statement and for what product each purported class member saw or relied upon and such complex variances necessitate striking class claims.

State warranty laws are also sufficiently dissimilar that they cannot be thrown together into one multistate class. *See Cole v. GMC*, 484 F.3d 717, 725-26 (5th Cir. 2007) (noting "numerous variations in the substantive laws of express and implied warranty among the fifty-one jurisdictions" concerning, *inter alia*, "reliance, notice of breach, vertical privity, and presumptions of merchantability"); *Karim v. Hewlett-Packard Co*., 2014 U.S. Dist. LEXIS 65742, at *23-25 (N.D. Cal. 2014) (same); *In re Hitachi TV Optical Block Cases*, 2011 U.S. Dist. LEXIS 135, at *17 (S.D. Cal. 2011) (same).

Here, for example, the Defendant's website contains terms and conditions that include warranty disclaimer language. *See* Ex. 3 to RJN. A nationwide class would require the court to apply the law of each state to determine the substantive legal impact of that language on a case-by-case basis.

Courts routinely reject a "worry later" approach when it comes to class claims. *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 675 (S.D. Cal. 1999). Plaintiff's non-California multistate class allegations should be stricken because those classes lack

**INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT**

3566398v.2

a representative, the California statutes which this lawsuit is brought under not apply outside California's borders, and because there is great variation among consumer protection and warranties laws from state to state, individual questions of law predominate, rather than common questions of law. *In re: Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 853, 856 (9th Cir. 1982).

## VII.  IF THE COURT DOES NOT DISMISS OR STRIKE THE FIRST AMENDED COMPLAINT, THE COURT SHOULD STAY THIS CASE PENDING FURTHER GUIDANCE BY THE FDA AS TO CBD PRODUCTS.

District courts have inherent discretionary power to stay cases, especially if it believes that staying a case will result in an "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005); *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 878 n. 6 (1998). A "stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

The primary jurisdiction doctrine applies where a case implicates a federal agency's expertise with a regulated product. Here, the FDA has such expertise and it is currently conducting a review of CBD products. *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002); *Kane v. Chobani, LLC*, No. 14-15670, 2016 WL 1161782 (9th Cir. Mar. 24, 2016). The doctrine enables a court to take advantage of an agency's expertise, protects the integrity of the regulatory scheme, and promotes uniformity. *See id.* The primary jurisdiction doctrine is a discretionary doctrine that allows "'courts to stay proceedings or to dismiss [an amended complaint] without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Garrison v. Whole Foods Market Group, Inc.*, No. 13-05222-CV, 2014 WL 2451290, *2 (N.D. Cal. June 2, 2014). This Court should stay the case based on the primary jurisdiction doctrine.

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

### A.    The Forthcoming CBD Guidance by the FDA.

In *Kane*, the Ninth Circuit considered the FDA's November 12, 2015 announcement of its initiation of a formal regulatory proceeding to determine the permissible uses of the term "natural" in food labeling and mandated that the FDA's commencement of rulemaking brings into play the primary jurisdiction doctrine. *Kane v. Chobani, LLC*, No. 14-15670, 2016 WL 1161782 (9th Cir. Mar. 24, 2016). Given the FDA proceedings, the Ninth Circuit reasoned that "delineation of the scope and permissible usage of the term[ ] 'natural'... implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.* at *1-2. On that ground, the Ninth Circuit directed the district court to stay a lawsuit where plaintiffs asserted that defendant Chobani, Inc. "deceptively and unlawfully" labeled its yogurt "natural" in violation of FDA regulations, pending resolution of the FDA's rulemaking proceedings. *Id.* at *2.  In *Viggano v. Johnson & Johnson*, this Court, based on the primary jurisdiction doctrine, in line with the *Kane* decision, and pending FDA guidance as to what constitutes proper labelling "natural" foods, stayed a lawsuit similar to the case at bar.  *See Viggano v. Johnson & Johnson*, Case No. CV 14-7250 (C.D. Cal. June 21, 2016).

Here similar to *Kane* and *Viggano*, the Court can and should stay the case. The FDA appears poised to act on regulation that will provide further guidance on the CBD products like the one at issue in this case.  Last year, the FDA conducted a public hearing and instituted an agency task force on evolving CBD regulation. *See* U.S. Food & Drug Admin., *Scientific Data and Information About Products Containing Cannabis or Cannabis-Derived Compounds; Public Hearing; Request for Comments*, 84 FR 12969 (Apr. 3, 2019).

In a news release issued on November 25, 2019, the FDA stated: "Today's actions come as the FDA continues to explore potential pathways for various types of CBD products to be lawfully marketed[.] This includes ongoing work to obtain and

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

evaluate information to address outstanding questions related to the safety of CBD products, while maintaining the agency's rigorous public health standards. The FDA plans to provide an update on its progress regarding the agency's approach to these products in the coming weeks."*See* https://www.fda.gov/news-events/press-announcements/fda-warns-15-companies-illegally-selling-various-products-containing-cannabidiol-agency-details

Senate Majority Leader Mitch McConnell has introduced an amendment to an appropriations bill that would require the FDA to fast-track guidance, including enforcement discretion for some CBD products, on "the process in which CBD meeting the definition of hemp will be evaluated for use in products."  *See* 2019 Legis. Bill Hist., U.S. S.B. 2522, 2019 Legis. Bill Hist. (2019) ("Within 90 days of enactment of this act, the FDA shall provide the Committee with a report regarding the agency's progress toward obtaining and analyzing data to help determine a policy of enforcement discretion and the process in which CBD meeting the definition of hemp will be evaluated for use in products.  Within 120 days of enactment of this act, the FDA shall issue a policy of enforcement discretion with regard to certain products containing CBD meeting the definition of hemp as defined by section 297A of the Agricultural Marketing Act of 1964"); AGRICULTURE, RURAL DEVELOPMENT, FOOD AND DRUG ADMINISTRATION, AND RELATED AGENCIES APPROPRIATIONS BILL, 2020, 116 S. Rpt. 110, at 39-40 (Sept. 2019).

On January 10, 2020, a bill was introduced in the U.S. House of Representatives by Rep. Collin Peterson, Chair of the House Agriculture Committee, that seeks to exclude "hemp derived cannabidiol or a hemp derived cannabidiol containing substance" from the definition of "dietary supplement" within Section 201(ff)(3)(B) of the FDCA.*See* https://www.congress.gov/bill/116th-congress/house-bill/5587

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

Recently, on March 5, 2020, the FDA released a report to Congress that describes "the agency's progress toward obtaining and analyzing data to help determine a policy of enforcement discretion and the process in which CBD meeting the definition of hemp will be evaluated for use in products." *See* RJN, Ex. 4, FDA Report to the U.S. House Committee on Appropriations and the U.S. Senate Committeee on Appropriations, Cannabidiol (CBD), ("FDA Report") available at https://www.scribd.com/document/450303002/FDA-CBD-report#from _embed . In the report, the FDA expressed intent to create a viable regulatory pathway for CBD as a dietary supplement.  The report lays out several concrete steps that may pave the way for CBD as a dietary supplement through FDA rulemaking.

FDA's report has been issued amid other signs that CBD policy is advancing. For instance, Dr. Stephen Hahn, Commissioner of the FDA stated in a public address before the National Association of State Departments of Agriculture on February 26, 2020 that, "We're not going to be able to say you can't use these products.  It's a fool's errand to even approach that."  According to FDA's most recent policy statement, "Certain cosmetic ingredients are prohibited or restricted by regulation, but currently that is not the case for any cannabis or cannabis-derived ingredients."  See Questions and Answers about FDA Regulation of Cannabis and Cannabis-Derived Products, Including Cannabidiol at https://www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd#cosmetics .  FDA is also working on a CBD product sampling study, which is due to be reported to Congress by June 20, 2020.  *See* RJN, Ex. 4, FDA Report, pg. 14-15.

Thus, CBD regulation and guidance is actively evolving. It can reasonably be concluded that between the time of filing the subject FAC and the ultimate conclusion of this litigation, the position of the FDA on the sale, distribution, labeling and marketing of various types of CBD products will have changed. Given the highly uncertain and fluid state of this area of law, it is all but impossible for this

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

Court to accurately assess and direct the parties on the relevant legal obligations implicated by the allegations within the FAC. Without some measure of legal certainty, there is a high risk that Defendant will be subject to conflicting legal obligations or directions imposed by this Court, the FDA and the various states.

**B.**     **The Primary Jurisdiction Doctrine Favors Staying this Action.**

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a FAC without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). While there is no "fixed formula" for applying the doctrine, the Ninth Circuit traditionally considers four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co., v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

Here, the central issue in this case is implicated by FDA's forthcoming interpretive guidance as to CBD products.  The 2018 Farm Bill explicitly grants the FDA exclusive jurisdiction to regulate CBD in consumer products. Pub. L. No. 115-334, 132 Stat. 4908–11. Questions that the FDA is currently working to resolve include how and when CBD is considered a drug versus a food additive, dietary supplement or cosmetic product, as well as what information is required to be on CBD product labels and whether the information varies according to use of the product. Other questions being considered by the FDA include whether limits should be placed on the amount of CBD per use and whether or to what extent health and disease claims, or structure and function claims, may be made in connection with the sale of various CBD products in different market channels. These questions are all explicitly under the FDA's jurisdiction pursuant to federal law. The resolution of these questions will be dispositive to all of the claims raised in this litigation.

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

The FDA's action is pursuant to a statute that subjects an industry to a comprehensive regulatory scheme that requires both expertise and uniformity in administration.  Where, as here, the resolution of Plaintiff's claims would require interpreting and considering technical terms and industry policies, it is within the FDA's field of experience. As the FDA's Acting Commissioner commented:  "The regulation of a product like CBD is complex and touches almost every aspect of FDA's authority." *See* Food & Drug Admin., *FDA Acting Commissioner's Remarks to the 2019 FDLI Annual Conference*, at 4 (May 2, 2019) (*available at* https://www.fda.gov/news-events/speeches-fda-officials/fda-actingcommissioners-remarks-2019-fdli-annual-conference-05022019 (last visited Oct. 18, 2019).

Even if the guidance and rulemaking by the FDA is not dispositive, a stay is appropriate because the Court will inevitably benefit from the administrative guidance in this case.  *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.,* 307 F.3d 775, 780 (9th Cir. 2002).The need for consistent guidance is underscored by the increasing volume of this type of litigation and the concomitant potential for inconsistent judicial rulings.  *Greenfield*, 18 F. Supp.3d at 1376; *Skybolt Aeromotive Corp. v. Milspec Prods.*, 2017 U.S. Dist. LEXIS 88597, at *29 (M.D. Fla. Jun. 9, 2017) (granting stay to promote "uniformity" and "consistency").

On January 3, 2020, a Florida District Court stayed a case similar to the present one at bar involving CBD products based on the primary jurisdiction doctrine pending guidance by the FDA.  *See* RJN, Ex. 5, Order on Motion to Dismiss.  The Florida District Court pointed out that the FDA is exercising regulatory authority over ingestible and other CBD products, there is uncertainty with respect to whether the FDA will conclude that some or all CBD products are food additives or supplement, and the labelling standards and requirements for CBD products will be different or the same as for other products. *See id.* at *14.  The court noted the importance of uniformity in administration of the labelling of ingestible CBD products.  The court found such factors militated in favor of application of the

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2

doctrine of primary jurisdiction and therefore stayed the case. *See id.* at *15. The court further determined that "[g]iven that this case is in the nature of public interest litigation, the delay occasioned by a stay under the current circumstances, would not prejudice Plaintiffs to any significant degree." *See id.* Finally, the court emphasized that the current regulatory framework was inadequate to resolve the legal issues, holding:

> "As for the adequacy of the current regulatory framework to resolve the issue posed by this case, the Court vehemently disagrees. The FDA regulations currently provide little guidance with respect to whether CBD ingestibles, in all their variations are food supplements, nutrients or additives and what labeling standards are applicable to each iteration."

*See id.*

Moreover, Plaintiff will not be unduly prejudiced by waiting until the FDA issues their regulations and guidance. Plaintiff dallied nearly a year to file this action after his purported purchase. The case is in the earliest stages of litigation, and has not yet been set for trial. There is no reason for the parties to waste resources and time in engaging in discovery because the need for discovery may be entirely unnecessary or greatly reduced when the FDA issues their interpretations on issues relevant to this case. *Herazo*, 2015 U.S. Dist. LEXIS 96811, at *13-*14. A stay should therefore simplify the issues and streamline a trial, should one take place. Further guidance would impact the adjudication of any summary judgment motion and, prior to that, simplify issues for the parties and Court in both fact discovery and expert discovery. On the other hand, permitting discovery while the FDA regulatory proceeding is underway may impose unnecessary burdens on Defendant by leading to discovery that could be rendered unnecessary by later FDA conclusions. *See Chronicle Publ'g Co. v. Nat'l Broad. Co.*, 294 F.2d 744, 749 (9th Cir. 1961) ("[t]o be effective," a stay intended to "avoid[ ] ... unnecessary duplication of effort" must include "pretrial discovery"); *see also Rhoades*, 504

F.3d at 1165 (district court should not exercise jurisdiction if agency referral is a more efficient alternative).  Finally, even after a stay the Court may order periodic status reports, and monitor whether a temporary stay is causing undue delay.

## VIII. **CONCLUSION**

For the reasons set forth above, the Court should dismiss the FAC for lack of Article III standing, for failure to state a claim and lack of subject matter jurisdiction. Furthermore, Plaintiff's claims based on out-of-state statutes should be dismissed or stricken, and his multistate class allegations should be stricken. Alternatively, this Court can stay this case pending the FDA's interpretive CBD guidance.  Plaintiff, who waited a year to file his claim after a claimed purchase, will not be prejudiced. A stay will also promote uniformity and consistency in the application of FDA standards.

Respectfully submitted,

Dated:  March 17, 2020

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
By:  /s/Ian A. Stewart
Ian A. Stewart
Daniel H. Lee
Attorneys for Defendant INFINITE PRODUCT COMPANY LLC, d/b/a Infinite CBD


BROWNSON NORBY PLLC
By:  /s/Thomas J. Norby
Thomas J. Norby
Attorneys for Defendant INFINITE PRODUCT COMPANY LLC, d/b/a Infinite CBD

INFINITE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE FIRST AMENDED COMPLAINT

3566398v.2