UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**JS-6**

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10148-DMG (Ex)** | Date | March 3, 2021 |

| | | | |
|---|---|---|---|
| Title | ***Adam Dasilva v. Infinite Product Company LLC*** | Page | 1 of 4 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   IN CHAMBERS—ORDER RE DEFENDANT INFINITE PRODUCT COMPANY LLC'S MOTION TO DISMISS [48]**

On November 27, 2019, Plaintiff Adam Dasilva filed a Class Action Complaint against Defendant Infinite Product Company, LLC, which was dismissed, with leave to amend, on February 4, 2020.  [Doc. # 42.]  On February 24, 2020, Plaintiff filed a First Amended Class Action Complaint ("FAC") seeking to certify a nationwide class and various state subclasses of consumers of Defendant's cannabidiol ("CBD") products and alleging that Defendant's sales and labeling of CBD products breach express and implied warranties and violate California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA").  [Doc. # 43].  Plaintiff also seeks declaratory relief under the Declaratory Judgment Act.  Compl. at ¶¶ 105-06.

Defendant filed a motion to dismiss all claims ("MTD").  [Doc. # 48.]  The MTD is fully briefed.  [Doc. ## 50 ("Opp."), 53 ("Reply"), 54 & 55 ("Supplemental Authority") .].  For the reasons set forth below, the Court **GRANTS** the MTD.[1]

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND[2]**

Defendant sells a variety of products containing CBD at its Website, www.infinitecbd.com.  FAC at ¶¶ 3, 13-15.  On November 12, 2018, Plaintiff purchased one such product, the CBD Isolate Dropper, from Defendant's website for $43.15.  *Id.* at ¶ 13.

---

[1] The Court **DENIES as moot** Defendant's Request for Judicial Notice because it need not rely on the documents attached therein to resolve the MTD.

[2] The Court accepts all material facts alleged in the Complaint as true solely for the purpose of deciding the MTD.

UNITED STATES DISTRICT COURT                    **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.    **CV 19-10148-DMG (Ex)**                                Date    March 3, 2021

Title    *Adam Dasilva v. Infinite Product Company LLC*                    Page    2 of 4

On November 22, 2019, the Center for Drug Evaluation and Research ("CDER") at the Food and Drug Administration ("FDA") sent a letter to Defendant's CEO, advising him that the FDA had reviewed the Website and found sales and advertising related to the following products that are "unapproved new drugs" and "misbranded drugs" in violation of the Food, Drug, and Cosmetics Act ("FDCA"): "Absolute Zero 99% + CBD Isolate," "Freezing Point CBD Topical Cream," "Afterglow Healing Oil 100 mg CBD Total," "Nano Enhancer Pure Nano CBD," "Nano Freezing Point CBD Topical Cream," "Asteroid Gummies," "Sour Asteroid Gummies," "Sweetened Dropper," and "Nano Non Dairy Creamer"—together, the "CBD Products."  FAC, Ex. A ("FDA Letter") [Doc. # 43-1]; *see* FAC at ¶¶ 16-17.  The letter noted that statements on Defendant's Website and social media platforms indicated medical uses for the CBD Products, despite lack of prior approval by the FDA.  FDA Letter at 3-5.  The letter also pointed out that several of Defendant's CBD products may be considered "adulterated human foods" or "unapproved new animal drugs" due to the presence of CBD, potentially in violation of the FDCA.  *Id.* at 5-8; FAC at ¶¶ 21-32.

Plaintiff asserts that he and the class members he seeks to represent would not have purchased any of the CBD Products or paid less for them "if they were aware of the misleading labeling of the Products by Defendant."  FAC at ¶ 39.  In addition, although the item Plaintiff purchased, the CBD Isolate Dropper, was not discussed in the FDA letter, Plaintiff asserts that the CBD Isolate Dropper was improperly labeled as a dietary supplement because it is, in fact, a misbranded drug.  FAC at ¶ 33-36.  His FAC states that Defendant's sales and labeling of the CBD Products violate the UCL, FAL, and CLRA and constitute breach of express and implied warranties.

Defendant moves to dismiss this case based on preemption, failure to state a claim, and lack of subject matter jurisdiction, and moves, in the alternative, to stay the case under the primary jurisdiction doctrine.  MTD at 2.

**II.**
**DISCUSSION**

The Court begins with the primary jurisdiction doctrine, which "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  This prudential doctrine is intended to be used only when a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency."  *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).  Courts consider the following non-exhaustive factors

---

UNITED STATES DISTRICT COURT                    **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10148-DMG (Ex)** | Date | March 3, 2021 |
|---|---|---|---|

| Title | *Adam Dasilva v. Infinite Product Company LLC* | Page | 3 of 4 |
|---|---|---|---|

in deciding whether the primary jurisdiction doctrine applies:  "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

The primary jurisdiction doctrine applies where the "initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*, 650 F.3d 1257, 1263–64 (9th Cir. 2011) (citation and internal quotation marks omitted).  Although the primary jurisdiction doctrine applies in "limited circumstances," and "a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation[,]" the FDA and Congress have separately expressed interest in regulating CBD.  *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760-61 (9th Cir. 2015).  As Defendant points out, and cases from other courts confirm, the FDA has recently formed a task force, conducted a public hearing, and opened a public hearing period on CBD products, and two CBD-related measures are pending in Congress.  MTD at 29-33; *see Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1308 (S.D. Fla. 2020); *see also Colette v. CV Scis., Inc.*, No. CV 19-10227-VAP (JEMx), 2020 WL 2739861, at *5 (C.D. Cal. May 22, 2020) (citing *Snyder*); *Glass v. Glob. Widget, LLC*, No. CV 19-01906-MCE (KJN), 2020 WL 3174688, at *4 (E.D. Cal. June 15, 2020) (same).  The FDA is within its purview to exercise rulemaking authority over the definitions and regulation of CBD products, but there is "uncertainty" regarding whether specific CBD products constitute drugs, food additives, dietary supplements, or nutrients, and whether labelling standards for CBD will be the same as with respect to other types of products under the FDCA and existing FDA regulations.  *See Snyder*, 430 F. Supp. 3d at 1308.  In fact, it is unclear how the Court can adjudicate Plaintiff's claims given the lack of clarity as to which of Defendants' CBD Products are drugs, dietary supplements, or food products, and what standards apply to those Products.  Consistent guidance and uniform administration are therefore needed in this area, particularly given potential safety concerns.  *See Syntek Semiconductor* 307 F.3d at 781.  Just as in *Snyder*, *Colette*, and *Glass*, "the factors militating in favor of application of the doctrine of primary jurisdiction are present in this case." *Snyder*, 430 F. Supp. 3d at 1308.

Echoing the plaintiffs in other CBD cases, Plaintiff argues that the primary jurisdiction doctrine is inapposite because forthcoming regulations will not apply retroactively to Defendant's Products.  Opp. at 29.  But the Court agrees with its sister courts that "the presumption against retroactivity may be overcome by statutory authorization" and that Congress may conclude that any forthcoming legislation must apply retroactively.  *Colette*, 2020 WL 2739861, at *5.

---

CV-90                              **CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk KT

UNITED STATES DISTRICT COURT                                      **JS-6**
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10148-DMG (Ex)** | Date | March 3, 2021 |
|---|---|---|---|

| Title | ***Adam Dasilva v. Infinite Product Company LLC*** | Page | 4 of 4 |
|---|---|---|---|

Because "further judicial proceedings are contemplated" in this case after the promulgation of regulations or statutes clarifying the definitions and treatment of CBD in consumer products, "jurisdiction should be retained by a stay of proceedings, not relinquished by a dismissal." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015) (quoting *N. Cal. Dist. Council of Hod Carriers v. Opinski*, 673 F.2d 1074, 1076 (9th Cir. 1982)). Accordingly, the Court **STAYS** this action until the FDA completes its rulemaking and/or Congress passes legislation regarding the definitions, marketing, and labeling of CBD products.

Given this ruling on the primary jurisdiction doctrine, the Court need not address Defendant's alternative grounds for dismissal of the FAC.

### III.
### CONCLUSION

The Court therefore **GRANTS** Defendant's motion and **STAYS** this case. During the stay, the case shall be administratively closed. The parties are directed to file a joint status report every 90 days, beginning on June 1, 2021.

**IT IS SO ORDERED**.